R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 2 9 2013

Appeal No. 13-56203

FILED_____
DOCKETED_____
DATE          INITIAL

# UNITED STATES COURT OF APPEALS
## NINExTH CIRCUIT

### Charles Nichols, In Pro Se

Petitioner/Appellant,

**v.**

### Edmund Brown, Jr., et al

**Appeal from the United States District Court
for the Central District of California,
Los Angeles Division Heard In Civil No. CV-11-9916 SJO (SS)
S. James Otero, District Judge**

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## FOR STAY OF DISTRICT COURT PROCEEDINGS
## PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY
## OF DISTRICT COURT PROCEEDINGS AND MOTION TO EXPEDITE
## APPEAL

## (ACTION REQUIRED BY AUGUST 5, 2013)

**Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA  90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info**

## 9th Cir. Rule 27-3 Certificate

1) The telephone numbers and office addresses of the attorneys for the parties are as follows:

Plaintiff is not an attorney:

Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info

Counsel for Defendants:
Jonathan Michael Eisenberg, Deputy Attorney General
Direct: 213-897-6505
CALIFORNIA DEPARTMENT OF JUSTICE
Suite 1702
300 S. Spring Street
Los Angeles, CA 90013

Lisa Bond
Direct: 213-626-8484
RICHARDS, WATSON & GERSHON
Suite 4000
355 South Grand Avenue
Los Angeles, CA 90071-3101

Thomas Peter Pierce
Direct: 213-626-8484
RICHARDS, WATSON & GERSHON
40th Floor
355 South Grand Avenue
Los Angeles, CA 90071-3101

2) Plaintiff Nichols is requesting an immediate administrative stay of the

district court proceedings and a stay of the district court proceedings pending the

decision of this appeal. A stay is required by August 5, 2013. Plaintiff's Opening Brief is due on August 7, 2013 and he has a deadline of August 12, 2013 to file a detailed eight point status report in district court. As explained in the body of this motion, the district court denied Plaintiff Nichols' motion for a stay of the district court proceedings pending this appeal. Both defendants have refused to stipulate to a stay of the district court proceedings until this appeal is fully briefed. Both Defendants have stated that they will soon be filing motions for judgments on the pleadings.

3) Counsel for the defendants were notified of this motion: when they were served with the district court motion to stay on July 12, 2013, again via email on July 23, 2013 (which was after the stay was denied) and will be served with this filing via US Mail.

Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info

# INTRODUCTION

In denying Plaintiff Nichols' motion to stay the district court proceeding pending appeal Dkt 121, pg2, the district court cited *Leiva-Perez v. Holder*, 640 F. 3d 962 - Court of Appeals, 9th Circuit (2011) for the four factors "in determining whether to grant a stay pending an appeal of an interlocutory order." *Leiva-Perez* was a habeas case in which the stay was granted and is a case which supports Plaintiff Nichols request for a stay as *Leiva-Perez* went on to say*:*

> **"If anything, a flexible approach is even more appropriate in the stay context.** Whereas "the extraordinary remedy of injunction" is the means by which a court "directs the conduct of a party...with the backing of its full coercive powers," a stay operates only "upon the judicial proceeding itself...either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." Id. at 1757-58 (quotation marks omitted). ***In other words, although "[a] stay pending appeal certainly has some functional overlap with an injunction," id. at 1758, stays are typically less coercive and less disruptive than are injunctions."*** *Leiva-Perez* at 966.  Emphasis added.

Although the threshold for a stay is less than that for a preliminary injunction, Plaintiff Nichols has met and exceeded the threshold for both which he demonstrates in the Argument section.

Prior to filing his motion for a stay in the district court, Plaintiff Nichols had asked opposing counsel to stipulate to a stay pending this appeal, they refused. After his motion to stay was denied by the district court, Plaintiff Nichols then asked opposing counsel to stipulate to a stay until Plaintiff Nichols' appeal is fully

briefed. Defendant Harris refused, Defendant City of Redondo Beach' response was that the City will be filing a motion for judgment on the pleadings.

Defendant Harris has also informed Plaintiff Nichols of her intention to file a motion for judgment on the pleadings which, given the reasoning for the denial of Plaintiff Nichols' motion for a preliminary injunction by the district court, will be granted prior to this court issuing a decision in this appeal thereby: rendering Plaintiff Nichols' appeal moot, denying him his right to appeal the denial of his preliminary injunction and further delaying him the relief he has sought since his action began on November 30, 2011.

Even if these proposed motions by opposing counsel are not immediately granted by the district court, Plaintiff Nichols would still have to reply to both motions for judgment on the pleadings, the report and recommendation by the magistrate judge regarding Defendant City of Redondo Beach' pending motion to dismiss as well as comply with the burdensome scheduling order the district court issued on June 12, 2013. The district court scheduling order overlaps with the briefing schedule for this appeal. August 12, 2013 is the next filing deadline.

Absent a stay by this court, the concurrent district court proceedings will prevent Plaintiff Nichols from prosecuting his case in district court because it is simply impossible for Plaintiff Nichols, who is not an attorney and who is

proceeding pro se, to: concurrently write his appellate briefs, reply to the motions for judgment on the pleadings, object to the report and recommendation by the magistrate judge, complete all discovery (which has not yet begun) by October 31, 2013 and file and serve all other motions including motions for summary judgment by November 13, 2013; not to mention whatever additional briefs and motions opposing counsel will file both on appeal and in the district court. The district court scheduling order of June 12, 2013 did not even give Plaintiff an opportunity to name the Doe defendants. With no discovery having even begun, Plaintiff was only given until June 28, 2013 to name the Doe defendants, which was of course impossible.

Both Defendant Harris and the City of Redondo Beach have stated their intention to depose Plaintiff Nichols and conduct written discovery which are unnecessary and will add considerably to the costs to be taxed to Plaintiff, costs he cannot afford to pay. These are in addition to the irreparable injuries Plaintiff Nichols will argue below.

## STATEMENT

1.) The district court has issued a scheduling order (Dkt #107) which severely burdens Plaintiff Nichols ability to prosecute his case even absent an appeal. The district court denied his motion to stay the district court proceedings

pending this appeal saying that:

"Four factors are considered in determining whether to grant a stay pending an appeal of an interlocutory order: (1) the stay applicant's likelihood to succeed on the merits; (2) whether the stay applicant will be irreparably injured absent the stay; (3) whether the stay would substantially injure other parties; and (4) the public interest. "The first two factors . . . are the most critical." Internal citations omitted.

"To satisfy the first factor, Plaintiff must show that he has raised "serious legal questions" and that "at a minimum, [he] has a substantial case for relief on the merits."

"Second, Plaintiff has not explained how he will suffer irreparable harm if a stay is not issued. Plaintiff states that "a favorable ruling in the Court of Appeals would likely allow Plaintiff to surmount [the City's] municipal ordinances."

"Finally, to the extent that the third and fourth factors are relevant, the Court finds that a stay of this action will prejudice the City and Harris by depriving them of the opportunity to have this matter adjudicated in a timely manner, and the public interest will not be served by allowing this action to linger indefinitely."

The district court did not provide a citation supporting the last paragraph.

2.)    Defendant Harris filed an opposition to Plaintiff Nichols' motion to stay the district court proceedings (Dkt #120) as did Defendant City of Redondo Beach (Dkt #119).  In her opposition, Defendant Harris did not argue that " the stay would substantially injure" her "or other parties." Nor did she argue anything regarding the "public interest."  Similarly, no "public interest" argument was made by Defendant City of Redondo Beach and the only "injury" it alluded to is:

"A stay of the proceedings would prejudice the City by depriving it of the opportunity to have its legal defenses adjudicated now, and would leave the City in legal limbo for the duration of the stay."

3.)    Plaintiff Nichols' first asked Defendants counsel to stipulate to a stay

of the district court proceedings pending the appeal on July 3, 2013 which was the same day Plaintiff Nichols' motion for a preliminary injunction was denied. At the same time, Plaintiff Nichols notified the Defendants that he would be filing his motion to stay the district court proceedings. On July 11, 2013, Defendants counsel informed Plaintiff Nichols via email that they would not agree to stipulate to the stay. On the same day, Plaintiff Nichols replied that he would be filing his request for a stay of the district court proceedings. The motion to stay was filed on July 12, 2013 (Dkt Nos.: 116-118). The motion stated that if it were denied by the district court then Plaintiff would seek a stay in this Court. Plaintiff Nichols' motion to stay the district court proceedings was denied on July 18, 2013. On July 18, 2013 Plaintiff Nichols asked counsel for Defendants if they would agree to stipulate to a stay of the district court proceedings until the appeal was fully briefed. Defendant Harris replied via email that she would not on July 19, 2013. There was no direct response regarding the request for a stay by Defendant City of Redondo Beach. Instead, both parties have propounded filing motions for judgment on the pleadings.

4.)    Given the reasons articulated by the district court in the denial of Plaintiff Nichols motion for a preliminary injunction and the reasons articulated in the district court's denial of the motion to stay the district court proceedings, any

motion for reconsideration, further motions to stay or any motions, objections, briefs, etc., by Plaintiff Nichols in the district court would be futile. The district court has already denied an extremely narrow motion for a preliminary injunction which would have applied only to Plaintiff Nichols and similarly situated persons who have a documented threat of violence made against them and would have applied only on private residential property (exempted by the laws at issue but substantially invalidated by the California Courts) and only in those places where licensed hunters are exempt from the laws at issue on appeal. Moreover, the district court declared a recent decision from the Seventh Circuit Court of Appeals to be "inapposite" even though that court struck down virtually identically worded laws in the State of Illinois (en banc denied, extensions of time to file a Cert Petition with the US Supreme Court have expired).

     5.)    August 12, 2013 is the next filing deadline in district court.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, Inc., 129 S. Ct. 365 - Supreme Court (2008) at 374.

## I.    This Appeal will be Dispositive of Appellant Nichols' Case.

When this appeal is fully briefed, this court will have the arguments and

evidence Plaintiff Nichols filed in the district court sufficient to render a dispositive decision. Absent the stay, Plaintiff Nichols will be irreparably injured.

Moreover, there are two cases pending in this court which will be partially dispositive of this appeal. It is likely that the decisions will be published before this appeal is fully briefed.

On December 6, 2012 this court took under submission the related cases of *Richards v. Prieto (Richards),* Ninth Circuit Case Number: 11-16255 and *Peruta v. County of San Diego (Peruta),* Ninth Circuit Case Number: 10-56971.

*Richards* argued on appeal that his is a facial and as-applied challenge to California Penal Code (PC) section 12050 and seeks to invalidate the law partially, or in the alternative, in its entirety. If *Richards* is successful then the decision will very likely be partially dispositive of this appeal's challenge to PC 25850(a), dispositive of PC 25850(b) and dispositive of PC 26350. In the related Peruta case, *Peruta* argued to uphold PC 12031(a)(1) which is now codified as PC 25850(a). Opposing counsel in *Peruta* argued that *Peruta* should have challenged PC 25850 instead of PC 12050. If this court decides that PC 25850 should have been the law that was challenged then that decision will likely be dispositive of three of the four laws Plaintiff Nichols challenges in this appeal. If the court decides that *Peruta* was correct then, like *Richards*, it too will be partially

dispositive of Plaintiff Nichols' appeal.

**II.     A Stay Pending a Decision in this Appeal Would Not Cause the District Court Case to "linger indefinitely."**

Pursuant to Ninth Circuit Rule 34-3 Plaintiff Nichols believes he is entitled to priority in hearing date and herein notifies this court of his entitlement to priority in hearing and does so prior to filing his opening brief.

In *Richards*, the Honorable District Court Judge Morrison C. England, Jr issued an indefinite stay to "remain in effect for a period of sixty (60) days following the Supreme Courts issuance of a decision on *McDonald v. City of Chicago*."

In *Scocca v. Smith*, Case No. CV11-01318 EMC the Honorable District Court Judge Edward M. Chen of the United States District Court for the Northern District of California, over the plaintiffs objection, entered an indefinite stay of the district court proceedings pending the "en banc hearing and decision in *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011), rehearing en banc granted, No. 07-15763, 2011 U.S. App. LEXIS 23703 (9th Cir. Nov. 28, 2011)."

**III.    The Defendants did not Argue that they would either be Irreparably or Substantially Injured if the Motion to Stay were Granted.**

The Defendants did not argue that they would either be harmed or injured, irreparably, substantially or otherwise in their oppositions to Plaintiff Nichols'

motion for a stay of the district court proceedings.

**IV.    Appellant Nichols has made a Strong Showing that he is Likely to Succeed on the Merits.**

In *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012)

(Dkt No. 78) the court facially invalidated two virtually identical Illinois laws:

**720 ILCS 5/24-1** provides in pertinent part:
Sec. 24-1. Unlawful Use of Weapons
(a) A person commits the offense of unlawful use of weapons when he knowingly: . . .
(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm...; or...
(10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm...
(b) Sentence. A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(11), or subsection 24-1(a)(13) commits a Class A misdemeanor...

**720 ILCS 5/24-1.6** provides in pertinent part:
Sec. 24-1.6. Aggravated unlawful use of a weapon
(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's

permission, any pistol, revolver, stun gun or taser or other firearm; or
(2) Carries or possesses on or about his or her person, upon any public street,
alley, or other public lands within the corporate limits of a city, village or
incorporated town, except when an invitee thereon or therein, for the
purpose of the display of such weapon or the lawful commerce in weapons,
or except when on his or her own land or in his or her own abode, legal
dwelling, or fixed place of business, or on the land or in the legal dwelling of
another person as an invitee with that person's permission, any pistol,
revolver, stun gun or taser or other firearm; and
(3) One of the following factors is present:
(A) the firearm possessed was uncased, loaded and immediately accessible
at the time of the offense; or
(B) the firearm possessed was uncased, unloaded and the ammunition for the
weapon was immediately accessible at the time of the offense...
(d) Sentence.
(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or
subsequent offense is a Class 2 felony for which the person shall be
sentenced to a term of imprisonment of not less than 3 years and not more
than 7 years.

Plaintiff Nichols as-applied motion for a preliminary injunction was far more

limited in scope.  His motion merely moved:

"[F]or a preliminary injunction barring the enforcement of California Penal
Code sections 25850(a), 25850(b), 26350 and 26400 to the extent they
prohibit, or infringe on the right of PLAINTIFF and similarly situated
individuals, who are not prohibited from possessing firearms, from openly
carrying firearms; in non-sensitive public places, on private residential
property and inside or on a motor vehicle for the purpose of self-defense and
for other lawful purposes." Dkt #86, pg 1.

PC 25850, 26350 and 26400, unlike the Illinois laws, do not themselves

contain any exemptions, not even for self-defense, in the plain text of the laws. Dkt

#88, Exhibits 1-3.

Although *Moore* struck down the Illinois prohibitions on concealed carry as well as the open carry of loaded and unloaded firearms, the Court stayed its injunction for 180 days to give the state time to enact new legislation saying:

> "...a state may be able to require "open carry" — that is, require persons who carry a gun in public to carry it in plain view rather than concealed. See *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783..." Dkt #78, pg 12."

Were this court to deny Plaintiff Nichols injunction then it would create a split between the Circuits.

More to the point, Plaintiff Nichols has a documented death threat against him. Had the district court granted his narrow as-applied motion it would have applied only to Plaintiff Nichols and similarly situated persons who also have a documented threat of violence against them and would, of course, apply only to those areas of the State of California where licensed hunters are exempt from the laws at issue in this appeal. Nor would the injunction, facially or as-applied, have affected any California law regulating the carrying of concealed firearms because, unlike Illinois, California has separate laws regulating concealed carry.

Plaintiff Nichols did not limit his arguments to the Second Amendment to the United States Constitution. Plaintiff Nichols made a number of arguments including an equal protection claim involving a suspect classification – racial minorities.

Defendant Harris admits to her Answer to Plaintiff Nichols operative Second

Amended Complaint to two of her own publications which she says "speak for themselves." Dkt #91, ¶ 39.

The first publication, Concealable Firearms Charges in California (2003), states *"When charged with PC section 12031, blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists throughout the period shown."* The period shown was 2000-2003. The adjacent bar chart to that page of the publication shows that 38.9% of Whites charged with violating PC 12031 were charged with felonies, compared to 71.1% of Blacks and 69.3% of Hispanics. The adjacent table shows that minorities accounted for 75.27% of the charges.

The second publication, Crime in California (2010) similarly shows that minorities accounted for 74.9% of all felony arrests for all weapons violations (including PC 12031(a)(1)) in the year 2010. The most recent 2011 edition shows similar results.

The disproportionate effect along racial lines is not in dispute. Defendant Harris' own publications say there is a disproportionate effect on minorities and Plaintiff Nichols concurs.

The district court misread *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985). "Once racial discrimination is shown to have been a "substantial" or

"motivating" factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." internal citation omitted. *Hunter* at 228. Hunter itself said that a disproportionate impact was not sufficient to invalidate the law. In any event, the burden of proof was on Defendant Harris and she made no attempt to show that the law would have been enacted were it not for minorities legally and openly carrying loaded firearms in public.

PC 25850(b) states "Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." Police officers are not required under the law to conduct inspections, it is optional. Dkt #86, pg 3

"Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause. People do not have to voluntarily give up their privacy or freedom of movement, on pain of justifying forcible deprivation of those same liberties if they refuse." *US v. Fuentes,* 105 F. 3d 487 - Court of Appeals, 9th Circuit 1997 at 490.

Similarly, in *US v. Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010) this court concluded that a failure to refuse to consent to a search in public resulted in a valid search under the Fourth Amendment and upheld the conviction for carrying a concealed loaded firearm in public.

**V.    Plaintiff Nichols has shown he is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Of the eight related cases currently on appeal, Plaintiff Nichols is the only plaintiff with a documented death threat against him. Instead of liberally construing Plaintiff Nichols' as-applied challenge to be an as-applied challenge the district court acknowledged the death threat but then erroneously converted Plaintiff Nichols' motion into a facial challenge even though nowhere in his motion briefs does Plaintiff Nichols even allude to a facial challenge.

Approximately three months prior to filing his action on November 30, 2011, Plaintiff Nichols received an email wherein the known sender threatened to shoot Plaintiff Nichols and called upon others to track Plaintiff Nichols down. The email had been carbon copied by the sender to an email distribution list with hundreds of recipients and posted on a publicly accessible website. Dkt 86, pg 7.

The Sheriff's department initially refused to allow Plaintiff Nichols to file a report. Plaintiff Nichols then emailed Defendant Harris' Department of Victims services which was not supportive, recommending that Plaintiff Nichols file a civil complaint against the Sheriff's office with the County Grand Jury for not taking his report. Dkt #105, Exhibit 1.

The LASD finally relented and took an incident report which Plaintiff Nichols subsequently filed as an ex parte application under seal (Dkt #10) which the district court rejected (Dkt #11).

One of the threats was *"You are now on my radar; abandon your disgusting power grab or face the reality that even God won't be able to help you when the gates of hell open up and the smell of gunpowder fills the air around you. As Robert Duvall said in Apocalypse Now, "I love the smell of napalm in the morning.""* Another excerpt from the email threat was *"And by the way, Nichols, don't take anything I have said here as a threat, because it is not intended as such in any way. It is a PROMISE..."* Additional excerpts from the death threat can be found in an email exchange between Plaintiff Nichols and Defendant Harris' Department of Victim Services (Dkt #105, Exhibit 1).

The Los Angeles County Sheriff's department came to the remarkable conclusion that the threat to shoot Plaintiff Nichols was not a crime because the sender did not use the word "kill" and therefore, in the eyes of the LASD, Plaintiff Nichols has no documented threat of violence against him and is therefore ineligible for a permit to carry a concealable weapon (CCW) pursuant to Sheriff Baca's policy in regards to issuing CCWs.

The district court is well aware of the LASD policy and history of not issuing CCWs. In a related case on appeal, *Thomson v. Torrance Police Department, et al* No. 12-56236, the same district court upheld the LASD's highly restrictive policy of not issuing CCWs. Regardless, Plaintiff Nichols does not seek

to carry a weapon concealed and the LASD is prohibited by state law from issuing licenses to openly carry a loaded firearm, particularly handguns as such permits are only theoretically available to residents of counties with a population of fewer than 200,000 persons and are only valid in the county of issuance.

As in Illinois, the only "defense" available to Plaintiff Nichols for openly carrying a loaded or unloaded firearm is an affirmative defense limited to when he is in "grave, immediate danger." An affirmative defense does not preclude his arrest, prosecution, fine and imprisonment. And it is illegal for Plaintiff to openly carry a loaded or unloaded handgun or loaded or unloaded long gun in public places for the purpose of self-defense where licensed hunters are exempt from the laws at issue in this appeal.

Plaintiff Nichols submits that death is an "irreparable injury" as is the ongoing deprivation of his fundamental, enumerated rights under the Second, Fourth and Fourteenth Amendments to the United States Constitution.

> "The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different." *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2821.

The Second Amendment is no different from the First Amendment:

> "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *SANDERS CTY.*

*REPUBLICAN CENT. COMMITTEE v. Bullock*, 698 F. 3d 741 - Court of Appeals 9th Circuit (2012) at 748.

## VI.    The Balance of Equities Tips in Plaintiff Nichols' Favor.

The district court erred in completely dismissing Plaintiff Nichols'

documented death threat against him and instead applied the four *Winter* factors

uniformly. Dkt #108, pg 11.

> "Flexibility is a hallmark of equity jurisdiction. "The essence of equity
> jurisdiction has been the power of the Chancellor to do equity and to mould
> each decree to the necessities of the particular case. Flexibility rather than
> rigidity has distinguished it...Consistent with equity's character, courts do not
> insist that litigants uniformly show a particular, predetermined quantum of
> probable success or injury before awarding equitable relief. Instead, courts
> have evaluated claims for equitable relief on a "sliding scale," sometimes
> awarding relief based on a lower likelihood of harm when the likelihood of
> success is very high...This Court has never rejected that formulation, and I
> do not believe it does so today." *Winters* at 391-392. Internal citations
> omitted.

The district court had a great deal of flexibility. It could have limited the

scope of Plaintiff Nichols' motion for a preliminarily injunction solely to Plaintiff.

It could have limited the scope of relief to the curtilage of Plaintiff Nichols' home

thereby reinstating the residential property exemption the California Courts have

substantially invalidated. It could have invalidated the population and residency

restrictions of licenses to openly carry a loaded handgun and ordered Defendant

City of Redondo Beach to issue the Open Carry handgun license it had previously

denied to Plaintiff Nichols. The district court could have limited the license to

only those areas of the state where licensed hunters are exempt from the laws at issue in this appeal.

Plaintiff Nichols, and similarly situated individuals, are banned from carrying loaded and unloaded firearms in public places for the purpose of self-defense.  Strict scrutiny, at a minimum, should be applied.  In bans such as the ones at issue in this appeal, the US Supreme Court facially invalidated the laws without articulating a level of scrutiny in *Heller* and *McDonald*.

An affirmative defense is no defense especially for criminal defendants in Los Angeles County, like Plaintiff Nichols, who are unable to afford a competent private attorney.  It is the opinion of the Los Angeles County Public Defenders Office that the Second Amendment is not a fundamental right despite the decision in *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 - Supreme Court (2010) which explicitly held that the Second Amendment right is fundamental.

### VII.   Granting Plaintiff Nichols' Motion to Stay the District Court Proceedings is in the Public Interest.

Without citation, the district court concluded that "[T]he public interest will not be served by allowing this action to linger indefinitely." Dkt #121, pg 3.

For the reasons given above, a stay of the district court proceedings pending Plaintiff Nichols' appeal of the denial of his preliminarily injunction is not an indefinite stay.  For the following reasons, a stay is in the public interest.

"We have also consistently recognized the "significant public interest" in upholding free speech principles, see *Sammartano*, 303 F.3d at 974 (collecting cases), **as the "ongoing enforcement of the potentially unconstitutional regulations ...would infringe not only the free expression interests of [plaintiffs], but also the interests of other people" subjected to the same restrictions...The balance of equities and the public interest thus tip sharply in favor of enjoining the ordinance.** As our caselaw clearly favors granting preliminary injunctions to a plaintiff like Klein who is likely to succeed on the merits of his First Amendment claim, we see no reason to remand for further proceedings with respect to Klein's motion in this case." Klein v. City of San Clemente, 584 F. 3d 1196 - Court of Appeals, 9th Circuit (2009) at 1208. Emphasis added.

The First Amendment presents a continuum not present in the mere carrying of firearms. A firearm can only be carried openly or concealed and the US Supreme Court in *Heller* has settled on Open Carry as the right guaranteed by the constitution.

## CONCLUSION

The most disturbing error made by the district court was its conclusion that the Unloaded Open Carry of firearms could be banned not because the people who merely openly carry unloaded firearms are a danger to the public, but because police might overreact and shoot them as well as shoot innocent bystanders in the process; thereby creating a danger to the public. By this dangerous logic, the government can ban everyone from doing anything, everywhere and anytime because a police officer might overreact and start shooting.

A stay of the district court proceedings pending this appeal is in the public

interest.  A failure to stay the proceedings will irreparably harm Plaintiff Nichols and similarly situated individuals.  The balance of equities tips in the favor of Plaintiff Nichols even absent the documented death threat against him.  And Plaintiff has established far more than a likelihood that he will succeed on the merits.

Plaintiff Nichols respectfully requests that the district court proceedings be stayed pending a decision in this expedited appeal of the denial of his preliminarily injunction.

Date: July 28, 2013

Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA  90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info