# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Charles Nichols

**Appellant,**

9th Cir. Case No. 13-56203

Originating Court Case No. 2:11-CV-09916-SJO-SS

vs.

Edmund Brown, Jr., et al

**Appellee(s).**

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 0 6 2013

FILED
DOCKETED _____ _____
DATE    INITIAL

## APPELLANT'S INFORMAL BRIEF
(attach additional sheets as necessary)

1.     Jurisdiction

     a.     Timeliness of Appeal:

         (i)     Date of entry of judgment or order of originating court: July 3, 2013

         (ii)     Date of service of any motion made after judgment (other than for fees and costs): July 12, 2013 (Motion to stay DC proceedings)

         (iii)     Date of entry of order deciding motion: July 18, 2013 - Stay denied by D.C.

         (iv)     Date notice of appeal filed: July 8, 2013

         (v)     For prisoners, date you gave notice of appeal to prison authorities: N/A

9th Cir. Case No. 13 - 56203                                    Page 2

2.      What are the facts of your case?

### *The Statutory Framework*

Enjoining the laws at issue in this appeal will not allow anyone to carry a firearm, loaded or unloaded, in any place except where it is now legal for licensed hunters to carry or transport a loaded or unloaded firearm *because licensed hunters are exempt from the laws at issue in this appeal.*

The specific statutes at issue do not contain any exemptions at all, not for self-defense or even for police. The exemptions are to be found elsewhere in various California Code sections.

The California bans on openly carrying firearms in public, be they loaded or unloaded, exempt licensed hunters either while they are hunting within an incorporated city limits or when traveling to or from a hunting expedition even if the incorporated city bans hunting within its city limits.

The same hunting exemption applies when traveling through unincorporated county territory where the discharge of a firearm is prohibited. Facially invalidating the bans would enable anyone who can legally posses a firearm to...(see attached pages).

9th Cir. Case No. 13 - 56203                          Page 3

3.    What did you ask the originating court to do (for example, award damages, give injunctive relief, etc.)?

A preliminary injunction barring the enforcement of California Penal Code sections 25850(a), 25850(b), 26350 and 26400 to the extent they prohibit openly carrying firearms; in non-sensitive public places, on private residential property and inside or on a motor vehicle for the purpose of self-defense and for other lawful purposes.

4.    State the claim or claims you raised at the originating court.

The laws are unconstitutional under the Second, Fourth and Fourteenth Amendments to the United States Constitution as well as unconstitutional under several sections of the California Constitution.

5.    What issues are you raising on appeal?  What do you think the originating court did wrong?

**STATEMENT OF ISSUES**

1. Does the Second Amendment to the United States Constitution secure the right to carry fully functional (i.e., loaded) firearms in public for the purpose of self-defense?

(See Attached Pages)

9th Cir. Case No. ___13 - 56203___                                    Page 4

6.    Did you present all issues listed in #5 to the originating court?

      __Yes__      If not, why not?
      Yes/No

7.    What law supports these issues on appeal?
      (You may, but need not, refer to cases and statutes.)

## ARGUMENT

The district court improperly disregarded Plaintiff's narrow as-applied motion and instead converted it into a purely facial challenge. Plaintiff Nichols requests that this court consider both his as-applied challenge as well as a facial challenge to the laws at issue in his motion.

Plaintiff Nichols did not even use the word "facially" in his motion, points and authorities, or reply. Instead the district court should have "liberally construed" the motion as it was intended - a very narrow injunction applied to plaintiff and similarly situated crime victims who are not prohibited from...

(See Attached Pages)

9th Cir. Case No. 13 - 56203 ____                    Page 5

8.    Do you have any other cases pending in this court?
      If so, give the name and docket number of each case.

      No.

9.    Have you filed any previous cases which have been decided by this court?
      If so, give the name and docket number of each case.

      No.

10.   For prisoners, did you exhaust all administrative remedies for each claim
      prior to filing your complaint in the district court?

      N/A

Charles Nichols ____
Name

PO Box 1302 ____
Redondo Beach, CA 90278 ____
Address

_____
Signature

August 4, 2013 ____
Date

## Additional Pages to Informal Brief

### 2. What are the facts of your case?

For the convenience of the court, Plaintiff Nichols has included that portion printed on the informal brief in these additional pages.

### *The Statutory Framework*

Enjoining the laws at issue in this appeal will not allow anyone to carry a firearm, loaded or unloaded, in any place except where it is now legal for licensed hunters to carry or transport a loaded or unloaded firearm *because licensed hunters are exempt from the laws at issue in this appeal.*

The specific statutes at issue do not contain any exemptions at all, not for self-defense or even for police. The exemptions are to be found elsewhere in various California Code sections.

The California bans on openly carrying firearms in public, be they loaded or unloaded, exempt licensed hunters either while they are hunting within an incorporated city limits or when traveling to or from a hunting expedition even if the incorporated city bans hunting within its city limits.

The same hunting exemption applies when traveling through unincorporated county territory where the discharge of a firearm is prohibited. Facially invalidating the bans would enable anyone who can legally posses a firearm to

9th Cir. Case No. 13-56203                                    Page 1

openly carry a firearm, loaded or unloaded, in any incorporated city or prohibited area of unincorporated county territory for the purpose of self-defense in the same places where licensed hunters today are free to carry or transport a loaded or unloaded firearm with nothing more than a $45 hunting license. Dkt #104, pg 17.

Assembly Bill 144: generally penalizes the unloaded Open Carry of handguns, except for licensed hunters and certain special interest groups and holders of permits to carry concealable weapons which are unavailable in most of the state. Otherwise, they must be unloaded, in a fully enclosed locked container, and transported directly between two places where it is legal to carry the handgun. Dkt #20.

Similarly Assembly Bill 1527 generally prohibits the "…carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county except "When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances." Dkt #21.

The laws at issue on this appeal do not regulate when or where a firearm may be discharged for either self-defense or for other lawful purposes. Nor do they regulate who may carry a firearm because, by judicial construction, even a convicted felon is exempt from the laws when he *reasonably believes* that he (or someone else) is in imminent danger of suffering *significant or substantial physical injury*, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense is legal. *People v. King*, 582 P. 2d 1000 - Cal: Supreme Court 1978 and CALCRIM 2514.

For non-felons, and persons not otherwise prohibited from possessing firearms, the laws penalize the mere carrying of firearms openly, loaded or unloaded, in non-sensitive public places for the purpose of self-defense (and on most residential private property outside the interior of one's home) except for the brief interval of time when one finds himself in *"immediate, grave danger."* But even then, it is only an affirmative defense. Dkt #104, pg 17. CALCRIM 2530.

The self-defense threshold to carry a loaded firearm for prohibited persons is "significant or substantial physical injury." However, for those who fall within the scope of the Second Amendment, California has decreed that they must wait until

they are in "immediate, grave danger" a much higher threshold than for convicted felons and other prohibited persons who fall outside the scope of the Second Amendment.

California's narrow self-defense exception to carrying a firearm in public for the purpose of self-defense is only an affirmative defense; subject to the whims of police, prosecutors, judges and juries. This was the case in Illinois where the 7th Circuit struck down that's states "regulations" on the carrying of firearms in public; an affirmative defense exception did not save the Illinois laws from being facially invalidated. Dkt #78, pgs 1-23.

The narrow self-defense exception for persons who fall within the scope of the Second Amendment cannot even be found in the code sections at issue which ban the open carry of firearms, loaded or unloaded.  It is found elsewhere in the penal code. Dkt #108, pg 8.  California Penal Code (PC) section 17030 defines "prohibited area" as "...any place where it is unlawful to discharge a weapon." Dkt #86, pg 3.

There are several special interest exemptions for openly carrying unloaded firearms in these same non-sensitive public places for: lawyers, collection agencies, licensed insurance adjusters, savings associations, secured creditors, "unarmed, uniformed security employed by a motion picture studio," armored

vehicle guards, persons engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons, retired police officers, etc., but not for the purpose of self-defense. Dkts #20, 21.

Nowhere in the 14 page bill banning the unloaded Open Carry of handguns can one find self-defense mentioned even once. Dkt #88, Exhibit 20.  The same is true for the 15 page bill banning the Open Carry of unloaded firearms other than handguns (e.g. rifles and shotguns).  Dkt #88, Exhibit 21.

The full text to most of the statutes relevant to this appeal can be found in the exhibits to Dkt #88, Exhibits 1-21.  Penal Code (PC) section 25850(a) was originally codified as part of the "Mulford Act of 1967 - AB1591" and then subsequently renumbered to PC 12031(a)(1) until it was repealed on January 1, 2012 as part of a substantial reorganization of the California Penal Code.  Dkt #88, Exhibit 19.  Penal Code (PC) section 25850(b) was formerly codified as PC 12031(e).  The text of these two subsections remained the same.

Effective January 1, 2012, California Penal Code section 12031 was repealed and section 25850, which similarly prohibits carrying a loaded firearm in public, became operative.  Dkt #88, Exhibit 19.  Effective January 1, 2012, California Penal Code section 26350 which prohibits carrying an unloaded handgun in public became operative.  Effective January 1, 2013, California Penal

Code section 26400 which prohibits carrying an unloaded firearm that is not a handgun in public became operative.  Dkt #86, pg 2.

The residential exception to firearms possession, is not even mentioned in the Penal Code sections at issue but is found elsewhere in the Penal Code, and was substantially invalidated by the California Courts.  Dkt #78, ¶ 10, Dkt #91, ¶ 10.

Facially invalidating the ban on openly carrying firearms would not invalidate the numerous state and Federal laws regulating the carrying of firearms in public places.  Such as public places within 1,000 feet of a K-12 public or private school (Penal Code section 626.9), nor would it invalidate over 200 pages of the California Penal Code regulating weapons; not to mention the extensive regulations of firearms found in California Code sections such as the: Business and Professions Code, Code of Civil Procedure,  Civil Code, Corporations Code, Education Code, Elections Code, Family Code, Financial Code, Fish and Game Code, Government Code, Health and Safety Code, Penal Code, Public Contract Code, Vehicle Code and Welfare and Institutions Code.

Many, perhaps most, people in California live within 1,000 feet of a K-12 school.  Exhibit 2-1 attached to Dkt #47 is a map of these school zones for the City of Redondo Beach California.  The city limits are outlined in blue, the areas within 1,000 feet of a K-12 school are shaded red.

9th Cir. Case No. 13-56203                                      Page 6

If one were one to add to all of those restricted areas all of the places covered by separate gun-control laws than the ones Plaintiff Nichols seeks to enjoin such as those applying to: government buildings, state parks, commercial buildings not open to the public, and residential property other than one's own residence then it is easy to see that there are very few inhabited areas in the state where one could exercise his Second Amendment right to openly carry a loaded firearm for the purpose of self-defense; let alone a handgun, loaded or unloaded as handguns must still be transported unloaded in fully enclosed lock containers within 1,000 feet of a K-12 public or private school pursuant to PC 626.9. Unless one drives a taxi, or has a CCW permit, that is. Those persons are exempt from the bans. The former by judicial construction, the latter by statute.

According to a 1968 Attorney General opinion, the ban on openly carrying loaded firearms in public could have been read to apply just to armed minorities who were not breaking any law, which was the sole reason the bill was passed.

> *"Although this final version of the clause is broader than its earlier versions, it remains clear that the legislature did not direct the provisions of section 12031 against all uses of firearms but only at uses of firearms which are "inimical to the peace and safety of the people of California.""*

"Inimical..." was the phrase used to describe minorities openly carrying loaded firearms. Dkt #88, Exhibit 25.

The law banning the carrying of loaded firearms was originally intended to

apply only to Open Carry when it was enacted in July of 1967. California law, since 1872, has prevented penalizing a person for violating more than one law for the same act and California had existing laws regulating the carrying of concealed weapons in July of 1967 when the loaded open carry ban was first enacted, it could not have applied to anything other than Open Carry. Dkt #81

That changed in 1969 when the California courts allowed a person to be punished for multiple law violations for the same act. The California Supreme Court invalidated that 1969 decision in 2012. Today, a person can now be punished by only one law for the same act. In the case of a convicted felon caught carrying an unregistered, loaded, concealed handgun; he can only be punished for one of those four violations. Dkt #81.

In its order denying Defendant Harris' motion to dismiss Plaintiff Nichols' FAC which sought to invalidate California's ban on openly carrying loaded firearms in public for the purpose of self-defense, the district court said that to violate California's ban on openly carried loaded firearms (PC 25850) "Plaintiff need only walk outside his home carrying a loaded firearm to effectuate his plan." (to violate the law). The same applies to the Open Carry of unloaded firearms as those bans rely on the same definition of private property and public place that apply to Loaded Open Carry. Dkt #82, pg 5.

9th Cir. Case No. 13-56203                                           Page 8

The 7th Circuit struck down Illinois' laws prohibiting the carrying of firearms in public, regardless of whether they were carried openly or concealed, loaded or unloaded, or within 1,000 feet of a K-12 public or private school. The court stayed its mandate for 180 days to give the State of Illinois time to enact new legislation consistent with its decision but added that "...a state may be able to require "open carry" — that is, require persons who carry a gun in public to carry it in plain view rather than concealed. See *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783..." Dkt #78, pg 12.

That 7th Circuit citation points to two cases from *Heller*: *Nunn v. State*, 1 Ga. 243 (1846) and *State v. Chandler*, 5 La. Ann. 489 (1850) which the Heller decision said "perfectly captures" the meaning of the Second Amendment "right to bear arms." Both *Nunn & Chandler* held that "Open Carry," to carry arms openly (not concealed), is the right guaranteed by the Constitution. Dkt #86, pg 6.

Unlike Illinois, California's judicial interpretation of PC 25850(a) makes it a crime: to carry a firearm on residential property unless the residential property is fully enclosed by a fence sufficiently tall to present a barrier to access by the public (it does not matter if one can easily see through the fence), in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory. Dkt

#86, pg 16.

The California courts differ on what constitutes a "loaded" firearm. One circuit indicated that for a firearm to be loaded, there must be a live round in the firing chamber. Another circuit concluded that a firearm is "loaded" if the firing chamber is empty but has a magazine or clip attached. Dkt #86, pg 12. The definition of a loaded firearm as being one with a live round in the firing chamber was the definition of a loaded firearm before PC 12031 was enacted. Dkt #88, Exhibit 26-4. An Oregon statutory definition of a loaded firearm also requires that a live round be in the firing chamber for a firearm to be considered loaded. Dkt #88, Exhibit 24.

PC 25850(b) states "Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." Police officers are not required under the law to conduct inspections, it is optional. Dkt #86, pg 3

PC 26350 makes it a crime to openly carry an unloaded handgun when that person carries upon his or her person an exposed and *unloaded handgun* outside a vehicle while in or on any of the following: A public place or public street in an incorporated city or city and county, a public street in a prohibited area of an unincorporated area of a county or city and county, a public place in a prohibited

area of a county or city and county, when a person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following: a public place or public street in an incorporated city or city and county, a public street in a prohibited area of an unincorporated area of a county or city and county, a public place in a prohibited area of a county or city and county.  PC 26350 does not contain a self-defense exception within the text of the statute.  Dkt #88, Exhibit 2.

PC 17030 defines "prohibited area" as "…any place where it is unlawful to discharge a weapon."  PC 26350 does not contain a self-defense exception within the text of the statute. Dkt #86, pgs 3-4.

PC 26400 makes it a crime to openly carry an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in an incorporated city or city and county. PC 26400 does not contain a self-defense exception within the text of the statute. Dkt #88, pg 4.

The California laws at issue here in addition to prohibiting one from openly carrying firearms on his own residential property and in non-sensitive public places, penalize the mere possession of ammunition capable of being discharged, while openly carrying an unloaded firearm, and increases the punishment for doing

9th Cir. Case No. 13-56203                                        Page 11

so to imprisonment in the county jail from six months to one year as well as a fine of $1,000. Dkt #88 – Exhibits #20 & 21.

PC 26040 states "Nothing in Section 25850 shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council." PC 26366 is an exception for "the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition." PC 26405 provides the same exception for unloaded long guns.

The California statutes which Plaintiff Nichols seeks to invalidate, partially and/or in their entirety, do not contain exceptions for self-defense within the text of the statutes. Those exceptions are to be found elsewhere in the penal code as a result of a substantial reorganization of the California Penal Code, effective January 1, 2012. These exceptions are extremely narrow in scope and duration. Neither do these exceptions preclude arrest, prosecution, fine and imprisonment. They are merely affirmative defenses.

These exceptions are found in PC 26045(a), 26362, & 26405. PC 26045(a) requires one to reasonably believe he is in "*immediate, grave danger*" which the district court inferred applies to the Open Carry of unloaded handguns via PC

26362.  However, PC 26405, which applies to unloaded firearms other than handguns requires **both** a reasonable belief that he or she is in grave danger **AND** a current restraining order (PC 26405(d)).  PC 26045(c) states: "As used in this section, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance." Dkt #108, pg 8.  The restraining order exceptions are merely affirmative defenses.

Anyone who lives in a county with a population of 200,000 or more people, cannot be issued a license to openly carry a handgun.  According to the last decennial census, 94% of the states population resides in counties with 200,000 or more persons.  Licenses to openly carry a loaded handgun are available (theoretically) to only those persons who reside in those counties with a population fewer than 200,000 people and the licenses are valid only within the county in which the licensee resides. Dkt #88, Exhibits 4-17

Absent the population and residency restrictions, the issuance of licenses to carry a concealable firearm, openly or concealed, is dependent upon both the approval of Defendant Harris and the approval of either one's county sheriff or chief of police and there is no limitation on the discretion of the county sheriff (or police chief) in issuing a license and no limitations on the county sheriff (or police

chief) from restricting where and when these licenses are valid. The application to apply for a license to carry a loaded handgun, openly or concealed, is prepared by Defendant Harris and is uniform statewide. The application states that a license to openly carry a handgun is limited to counties with a population of fewer than 200,000 people, is available only to residents of those counties and is valid only within the county it is issued. Defendant Harris has the authority, under state law, to revise the application and remove the population, residency, good cause and good moral character requirements. Dkt #88, Exhibits 4-17

California does not provide for the licensing of private individuals to carry a long gun (loaded or unloaded) for the purpose of self-defense. The laws concerning the licensing of the carrying of concealable firearms, openly or concealed, are extensive. The text of many of the more relevant Penal Code sections can be found in Dkt #88, Exhibits 4-18.

California's ban on openly carried loaded firearms in public began in a memo dated March 16, 1967 addressed to the author of the subsequent bill (AB 1591), Assemblyman "Don" Mulford, informing him of the existence of a group "The Black Panthers" which read in part "...these Negroes were violently anti-White and carried loaded shotguns around with them and had .45 automatics strapped on their hips." Dkt #88, Exhibit 26-66. Dkt #88, Exhibit 25.

On March 27, 1967 Assemblyman Mulford sent an internal memo to George Murphy asking him to research bills that would control private armies, saying he was "particularly interested in legislation that would control firearms being carried by organizations such as the Black Panthers..." Dkt #88, Exhibit 26-65.

Intentionally or coincidentally, the eventual language of PC 12031 was virtually identical to that of an Illinois bill enacted in 1962 which was invalidated by the 7th Circuit Court of Appeals on December 11, 2012. Dkt #78, pgs 1-23.

Dkt #88, Exhibits 26-4 through 26-76 are excerpts from the Mulford Act legislative file Plaintiff Nichols obtained from the California State Archives which contained over 700 pages of documents which clearly prove the racial intent. Dkt #88, Exhibits 26-1 through 26-3.

The passage of the legislation was assured when approximately 30 members of the Black Panther Party for the Purpose of Self-Defense staged an impromptu demonstration in the Capitol building protesting the very bill which was authored solely for the purpose of disarming minorities from openly carrying (bearing) loaded firearms. They attempted to enter the Assembly chambers where the bill was being heard in committee. They were bearing loaded firearms. They were prevented from entering the Assembly chamber. They peacefully surrendered their firearms. Dkt #88, Exhibits 26-69, 26-24, 26-14.

The National Rifle Association would eventually endorse the legislation before its passage and recently argued to *uphold* PC 12031(a)(1)/PC 25850(a) in the related *Peruta v. County of San Diego* 9th Circuit Case No. 10-56971 appeal.

This is not a concealed carry case, it is an Open Carry case. Plaintiff Nichols does not seek to carry a weapon concealed nor does he seek to invalidate any concealed carry permit. Dkt #83, ¶ 114.

Enjoining the laws at issue would not enable anyone to legally carry a restricted weapon such as firearms subject to NFA registration other than where and when currently allowed by California & Federal law.

The laws at issue here penalize the Open Carry of those firearms in common use for the purpose of self-defense in non-sensitive public places, regardless of whether or not those firearms are loaded or unloaded. Plaintiff Nichols simply seeks to openly carry a firearm, loaded and unloaded, for the purpose of self-defense and for other lawful purposes in non-sensitive public places. Nothing more.

### *Application Of The Laws To Plaintiff Nichols*

In his pleadings, Plaintiff Nichols had noted that his front fence can be stepped over by anyone of average height. As the district court correctly concluded from Plaintiff Nichols' cited precedent (*People v. Strider*, 177 Cal. App.

4Th 1393 (2009)), all Plaintiff Nichols need do is to walk outside his home openly carrying a loaded firearm (PC 25850) and/or an unloaded handgun (PC 26350) and/or an unloaded firearm other than a handgun (PC 26400) to violate the law. Dkt #86, pg 11.

Plaintiff Nichols is a resident of Los Angeles County, California. He is not prohibited from possessing firearms under either State or Federal law. California law limits the issuance of licenses to openly carry a handgun to counties with a population of fewer than 200,000 people. These licenses are only theoretically available to residents of those counties and are only valid within the county within which they are issued. Dkt #87.

Plaintiff Nichols sustained a severe back injury in a riding accident in August of 2002 leaving him partially disabled. Plaintiff Nichols is not physically able to defend himself other than with a firearm. Dkt #87.

Current California law prevents Plaintiff Nichols from openly carrying a firearm in case of confrontation for the purpose of self-defense. This includes self-defense with a less-lethal Taser which California defines as a "firearm."

Plaintiff Nichols lives in an incorporated city which does not have a chief of police. He asked for an application and a license to openly carry a loaded handgun from the Chief of Police for the City of Redondo Beach but was denied because of

the population and residency restrictions. Dkt #78, ¶¶ 35-36, Dkt #88, Exhibit 6.

Plaintiff Nichols has plead in his operative Complaint that it is futile for PLAINTIFF to apply for a license to openly carry a loaded handgun from any issuing authority in the State of California. Dkt #83, ¶ 11.

Plaintiff Nichols cannot even obtain a license to carry a handgun concealed. The Los Angeles County Sheriff's department has a policy of not issuing CCWs except where there is a documented threat against the applicant (there are certain exceptions not relevant to Plaintiff Nichols such as for judges and retired police officers).

However, Plaintiff Nichols does have a documented threat against him. Approximately three months prior to filing his action on November 30, 2011, Plaintiff Nichols received an email wherein the sender threatened to shoot Plaintiff Nichols and called upon others to track Plaintiff Nichols down. The email had been carbon copied by the sender to an email distribution list to hundreds of recipients and posted on a publicly accessible website. Dkt 86, pg 7.

In fear for his life, Plaintiff Nichols emailed then Hermosa Beach Police Chief Greg Savelli for help. Chief Savelli had been very supportive of Plaintiff Nichols' Open Carry events in his city, going so far as to provide a booth for Open Carry activists during the City's annual Fiesta Hermosa. He advised Plaintiff

Nichols to file a report with the Los Angeles County Sheriff's department (LASD) because they had jurisdiction over the location Plaintiff Nichols received the death threat.

The Sheriff's department initially refused to allow Plaintiff Nichols to file a report. Plaintiff Nichols then emailed Defendant Harris' Department of Victims services which was not supportive, recommending that Plaintiff Nichols file a civil complaint against the Sheriff's office with the County Grand Jury for not taking his report. Dkt #105, Exhibit 1.

The LASD finally relented and took an incident report which Plaintiff Nichols subsequently filed as an *ex parte* application under seal (Dkt #10) which the district court rejected (Dkt #11).

One of the threats was:

> *"You are now on my radar; abandon your disgusting power grab or face the reality that even God won't be able to help you when the gates of hell open up and the smell of gunpowder fills the air around you. As Robert Duvall said in Apocalypse Now, "I love the smell of napalm in the morning.""*

Another excerpt from the email threat was *"And by the way, Nichols, don't take anything I have said here as a threat, because it is not intended as such in any way. It is a PROMISE..."* Additional excerpts from the death threat can be found in an email exchange between Plaintiff Nichols and Defendant Harris' Department of Victim Services (Dkt #105, Exhibit 1).

The Los Angeles County Sheriff's department came to the remarkable conclusion that the threat to shoot Plaintiff Nichols was not a crime because the sender did not use the word "kill" and therefore, in the eyes of the LASD, Plaintiff Nichols has no documented threat of violence against him and is therefore ineligible for a CCW pursuant to Sheriff Baca's policy in regards to issuing CCWs.

The district court is well aware of the LASD policy and history of not issuing CCWs. In a related case on appeal, *Thomson v. Torrance Police Department, et al* No. 12-56236, the same district court upheld the LASD's highly restrictive policy of not issuing CCWs.

Defendant Harris had, and has, the power and the authority of any District Attorney. Defendant Harris could have stepped in and prosecuted the person who sent Plaintiff Nichols the death threat, whom the LASD and Los Angeles District Attorney's office would not prosecute, but she did not.

If Plaintiff Nichols so much as steps outside his door into his front yard openly carrying a firearm, loaded or unloaded he is in violation of the law. He is generally prohibited from carrying even an unloaded handgun in a fully enclosed locked container for the purpose of self-defense in a non-sensitive public places of incorporated cities or unincorporated county territory where the discharge of a firearm is prohibited. He is likewise prohibited from openly carrying a loaded or

9th Cir. Case No. 13-56203                                    Page 20

unloaded firearm which is not a handgun (e.g., rifle or shotgun) outside of his automobile in an incorporated city or city and county. He is prohibited from possessing a loaded firearm inside of his motor vehicle.

In short, if Plaintiff Nichols is attacked inside or outside of his motor vehicle in an incorporated city, city and county or unincorporated county territory where the discharge of a firearm is prohibited then he will be unarmed and unable to defend himself in these non-sensitive public places. Places were licensed hunters are exempt from the laws at issue in this appeal.

**5.    What issues are you raising on appeal? What do you think the originating court did wrong?**

For the convenience of the court, Plaintiff Nichols has included that portion printed on the informal brief in these additional pages.

1.  Does the Second Amendment to the United States Constitution secure the right to openly carry fully functional (i.e., loaded) firearms in public for the purpose of self-defense?

2.  Does the Second Amendment to the United States Constitution secure the right to openly carry an unloaded handgun in public with ammunition at the ready, for the purpose of self-defense?

3. Does the Second Amendment to the United States Constitution secure the right to openly carry an unloaded firearm other than a handgun (e.g., rifle, shotgun) in public with ammunition at the ready, for the purpose of self-defense?

4. Does the Second Amendment to the United States Constitution secure the right to openly carry firearms, loaded or unloaded, in the curtilage of one's home regardless of whether it has a fence or other barrier tall enough to prevent ready access to the property?

5. Does mere refusal to consent to a stop or search in itself give rise to probable cause for an arrest?

6. Does the Fourth Amendment to the United States Constitution secure the right to openly carry firearms, loaded or unloaded, in the curtilage of one's home?

7. Does a ban on openly carrying loaded firearms in public, which was enacted in 1967 solely to disarm racial minorities who were not breaking any laws, and which was the only motivating factor in enacting the law, and to which a racially discriminatory impact to this day is demonstrated; save the law from invalidation under the Fourteenth Amendment in light of *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985) and its progeny?

9th Cir. Case No. 13-56203                                         Page 22

8. Are the laws unconstitutionally vague in light of *Kolender v. Lawson*, 461 US 352 - Supreme Court (1983) and its progeny?

9. Does subjecting persons who are not prohibited from possessing firearms to the very high threshold of "grave, immediate danger" before they can arm themselves for the purpose of self-defense violate either the Second or Fourteenth Amendment given that convicted felons and other persons who are outside the scope of the Second Amendment have a much lower threshold before they can arm themselves for the purpose of self-defense?

10. Did the district court err in converting a narrowly crafted, pro se, as-applied motion for a preliminary injunction, which would have enjoined application of the laws merely to crime victims who have a heightened-need for self-defense, into a purely facial challenge instead of liberally construing the motion?

The district court denial of Plaintiff Nichols' motion is eleven pages long. It is impossible to identify and counter every error made by the district court in the limited pages available. Fortunately, most involve pure questions of law which either alone, or coupled with the excerpts of record will enable this court to decide that the injunction should be issued.

The First and foremost error was converting the very narrow, limited motion

into a purely facial challenge applying generally.  Dkt #108, pg 4.

The second error the court made was in not having a hearing or to request supplemental briefing before denying the motion.

An example of both mistake of fact and law is to be found in footnote 11 of Dkt 108 where the district court states that:

> "...while Plaintiff has submitted evidence that Section 25850 was originally enacted in response to members of the Black Panthers openly carrying firearms in public, there is no evidence that the Challenged Statutes have been disproportionately enforced against any group on the basis of a suspect classification."

The district court misreads *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985).  "Once racial discrimination is shown to have been a "substantial" or "motivating" factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." internal citation omitted.  *Hunter* at 228.

In footnote 5, the district court dismisses the centerpiece of Plaintiff Nichols Second Amendment argument, that the US Supreme Court decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008) meant exactly what Justice Scalia said. Justice Scalia's decision doesn't require a secret decoder ring to interpret.

The district court concluded that "Plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."*Oakland*

*Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985)" because Plaintiff Nichols did not file a suit when the Loaded Open Carry ban was first enacted in July of 1967. Dkt #108, pg 11. Plaintiff Nichols was seven years old when former Penal Code section 12031 was enacted. Furthermore, it would have been futile to bring any action prior to *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 - Supreme Court (2010) because this circuit had held that the Second Amendment was not an individual right and as late as January of 2010 said was still bound by those earlier precedents. *US v. Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010) at 116.

It would have been procedurally futile as well to file the motion. It was not until April 16, 2013 when Defendant Harris filed her Answer to Plaintiff Nichols' SAC did she admit to enforcement. Prior to that date she had argued that Plaintiff Nichols lacked standing because his fears of arrest and prosecution were merely "hypothetical" and "speculative" that he would be arrested were he to openly carry a loaded firearm in public. The delay in filing the motion for a preliminary injunction was not caused by Plaintiff Nichols, the delay was brought on by Defendant Harris' intentional conduct and the district court's delay in requiring her to either promise not to enforce the law or to file an Answer and defend its constitutionality. Had Plaintiff Nichols filed his motion before the district court

held that he had standing, the only thing Plaintiff Nichols would have been able to appeal was the denial of a motion for a preliminary injunction because he lacked standing.

When Plaintiff Nichols filed his action against PC 12031/PC 25850, the unloaded handgun open carry (PC 26350) ban had not gone into effect, the National Rifle Association (NRA) attorney "Chuck Michel" had testified before a state committee hearing that if the ban was enacted he was going to challenge the law in court and the NRA had solicited funds to fight the bill. The subsequent ban on openly carrying unloaded firearms other than handguns did not go into effect until January 1, 2013. The district court did not conclude that Plaintiff Nichols had standing to pursue his action against the Loaded Open Carry Ban (PC 25850) until more than two months later when, on March 5, 2013 the district court denied the motion to dismiss made by Defendant Harris. Dkt #82. Plaintiff Nichols then filed his operative Second Amended Complaint on March 29th, Plaintiff Nichols filed his motion for a Preliminary Injunction on April 12th, which was as fast as was humanly possible.

"Chuck" Michel is the attorney for the two related cases: *Peruta v. County of San Diego,* Ninth Circuit Case Number: 10-56971 and *McKay v. Sheriff Hutchens* Ninth Circuit Case Number: 12-57049.

9th Cir. Case No. 13-56203                                                    Page 26

Plaintiff Nichols originally had intended to file his motion for a preliminary injunction as soon as the expected motion to dismiss his initial complaint had been denied. Plaintiff's initial complaint had everything the two complaints filed against the virtually identically worded statutes in Illinois had, and more. It certainly plead more than any of the related California cases. Despite this, the district court subjected Plaintiff Nichols to a pleading standard unheard of in any Federal Civil complaint seeking to invalidate laws restricting the carrying of firearms in public. Both his original Complaint and FAC were dismissed. The original because it wasn't long enough, the FAC because it was too long.

The battle over standing and the unprecedented pleading requirements set by the district court for Plaintiff Nichols' Complaint had exhausted Plaintiff Nichols' finances. Plaintiff was broke and simply did not have the money or time to appeal the inevitable denial by the district court of what is now his motion on appeal. One need only compare the *Oakland Tribune* decision with the facts in the record of Plaintiff Nichols' case to see how grossly inapplicable it is to Plaintiff Nichols' case.

Finally, the district court erred in not applying a sliding scale, it applied the "Winters factors uniformly" instead of following the decision of *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127 - Court of Appeals, 9th Circuit (2011)

9th Cir. Case No. 13-56203                                              Page 27

Plaintiff Nichols, and similarly situated crime victims with documented threats against them are entitled to the benefit of a sliding scale. Plaintiff Nichols submits that the death threat against him should have been factored into the lower court decision. It was not.

Plaintiff Nichols does not concede any point by the district court, there simply aren't enough pages allotted to Plaintiff to give an adequate reply to all of them.

## 7. What law supports these issues on appeal?

For the convenience of the court, Plaintiff Nichols has included that portion printed on the informal brief in these additional pages.

### ARGUMENT

The district court improperly disregarded Plaintiff's narrow as-applied motion and instead converted it into a purely facial challenge. Plaintiff Nichols requests that this court consider both his as-applied challenge as well as a facial challenge to the laws at issue in his motion.

Plaintiff Nichols did not even use the word "facially" in his motion, points and authorities, or reply. Instead the district court should have "liberally construed" the motion as it was intended - a very narrow injunction applied to plaintiff and similarly situated crime victims who are not prohibited from

9th Cir. Case No. 13-56203

possessing firearms and who have a heightened need for self-defense.  Given the

district court's decision in the related case of *Thomson v. Torrance Police*

*Department, et al No. 12-56236,* the district court should have issued the

injunction.

> "Once racial discrimination is shown to have been a "substantial" or
> "motivating" factor behind enactment of the law, the burden shifts to the
> law's defenders to demonstrate that the law would have been enacted without
> this factor." *Hunter v. Underwood,* 471 US 222 - Supreme Court (1985).

Disproportionate impact is not the deciding factor in whether or not a law is

constitutional.  It is the "motivating factor" which shifts the burden of proof onto

Defendant Harris.  It is the conclusion of Defendant Harris in her own publications

Plaintiff Nichols cited in ¶ 39 of his SAC that the law is disproportionately

enforced.  As the record shows, there was no other motive than to disarm racial

minorities during the racial unrest of the period.

The district court concluded that "...Plaintiff has submitted evidence that

Section 25850 was originally enacted in response to members of the Black

Panthers openly carrying firearms in public..." Dkt #108 footnote 11.  In her 20

page opposition to Plaintiff Nichols motion Defendant Harris does not even

attempt to demonstrate that the law would not have been enacted because it cannot,

the record is clear.  Instead both she and the district court concluded that Plaintiff

Nichols also bears the burden to prove that the law has been "...disproportionately

9th Cir. Case No. 13-56203                                                Page 29

enforced against any group on the basis of a suspect classification."

Both Defendant Harris and the district court relied on *Nordyke v. King*, 681 F. 3d 1041 n.2 which cited *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955) which is clearly inapposite because the Plaintiffs in *Nordyke*, unlike here, did not argue an equal protection claim based on race and the Nordykes sought to hold a gun show inside of a government building which is a "sensitive place" under *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008). California has separate laws regulating the possession of firearms in sensitive places such as government buildings and schools – those laws are not at issue in this case.

In his SAC, Plaintiff Nichols named two publications by Defendant Harris which show that minorities are disproportionately arrested for violation of PC12031 (now PC 25850). Dkt #83, ¶ 39 In Defendant Harris' Answer to his SAC, Defendant Harris admits to publishing crime statistics information and that the "publications speak for themselves." Dkt #91, ¶ 39

What do the publications say? The first publication, Concealable Firearms Charges in California (2003), states *"When charged with PC section 12031, blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists*

*throughout the period shown.*" The period shown was 2000-2003. The adjacent bar chart to that page of the publication shows that 38.9% of Whites charged with violating PC 12031 were charged with felonies, compared to 71.1% of Blacks and 69.3% of Hispanics. The adjacent table shows that minorities accounted for 75.27% of the charges.

The second publication, Crime in California (2010) similarly shows that minorities accounted for 74.9% of all felony arrests for all weapons violations (including PC 12031(a)(1) in the year 2010. The most recent 2012 edition shows similar results.

The disproportionate effect along racial lines is not in dispute. Defendant Harris' own publications say that there is a disproportionate effect on minorities and Plaintiff Nichols concurs.

The legislative record is proof of the racially discriminatory intent and purpose of PC 25850(a) & PC 25850(b). Formerly codified as PC 12031(a)(1) and PC 12031(e) originally enacted as part of the Mulford Act of 1967. The burden of proof was on Defendant Harris, she made no attempt to satisfy her burden of proof. Defendant Harris' own publications do speak for themselves. PC 12031 was unconstitutional from day one. Fragmenting the statute, renumbering the subsections and scattering the pieces throughout the penal code on January 1, 2012

9th Cir. Case No. 13-56203

does not save them from invalidation.

The district court stated that "Courts that have considered the meaning of Heller and McDonald in the context of open carry rights have found that these cases did not hold that the Second Amendment gives rise to an unfettered right to carry firearms in public." Plaintiff Nichols is not seeking an unfettered right to carry firearms in public, he simply seeks to openly carry a firearm, loaded and unloaded, for the purpose of self-defense in the same places where it is now legal for licensed hunters to carry loaded and unloaded firearms.

The 7th Circuit facially invalidated the nearly identically worded bans on the Open Carry of loaded and unloaded firearms in public in *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) *Kachalsky* limited the scope of its decision to "...a single issue: Does New York's handgun licensing scheme violate the Second Amendment by requiring an applicant to demonstrate "proper cause" to obtain *a license to carry a concealed handgun* in public?" *Kachalsky* at 83 (emphasis added).

The plaintiffs in *Kachalsky* did not challenge New York's 1963 ban on openly carrying loaded handguns. New York, unlike California, does not restrict the Open Carry of long guns, loaded or unloaded, in incorporated cities or unincorporated county territory where the discharge of a firearm is prohibited;

9th Cir. Case No. 13-56203                                    Page 32

either for the purpose of self-defense or for any lawful activity.

The court in *Kachalsky* did not support the argument that states can ban Open Carry and the 2nd Circuit cited a number of cases to refute the *Kachalsky* plaintiff's argument that states could ban Open Carry but once having done so, must permit the carrying of concealed handguns.

*Kachalsky* is also inapposite because the 2nd Circuit based its decision on the State of New York's "duty to retreat" in public but not in the home. California has never imposed such a requirement. There is no duty to retreat in public in California:

> "[W]hen a man without fault himself is suddenly attacked in a way that puts his life or bodily safety at imminent hazard, he is not compelled to fly or to consider the proposition of flying, but may stand his ground and defend himself to the extent of taking the life of the assailant, if that be reasonably necessary." *People v. Newcomer*, (1897) 118 Cal. 263, 273.

*Kachalsky* is inapposite to Plaintiff Nichols' motion with the exception that Plaintiff Nichols' motion for a preliminary injunction was originally limited to those who had a "special need."

The two most relevant citations in *Kachalsky* are *Nunn v. State*, 1 Ga. 243 (1846) and *State v. Chandler*, 5 La. Ann. 489 (1850) which constitute the centerpiece of Plaintiff Nichols Second Amendment challenge.

*In Re Rameriz* 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351; 34 A.L.R.

9th Cir. Case No. 13-56203                                    Page 33

51 adopted *Nunn v. State* (cited as *Nunn v. Georgia*) in holding that Open Carry is the right in California. *Rameriz* has been cited directly or indirectly in upholding convictions for unlicensed concealed carry ever since.

The court in *Rameriz* incorrectly concluded that the Second Amendment referred solely to militias and was only a limitation on the Federal government. It then proceeded to consider various decisions from sister states and settled on *Nunn* as the applicable law for California.

According to a recent California Supreme Court decision: "***The act of firearm possession, by itself, is innocent.*** Thus, under Hayes, we would have to consider the unlawful components of that act, i.e., defendant was a felon, the firearm was loaded, and the firearm was concealed." There are only two ways to carry a firearm, openly or concealed. A firearm carried in an enclosed container, such as a suitcase, is considered to be concealed carry under California law. See *People v. Dunn*, 61 Cal. App. 3d 12 - Cal: Court of Appeal (1976) at 14.

When Justice Scalia said in *Heller* at 2809 that *Nunn* and *Chandler* perfectly captured the meaning of "the right of the people to keep and bear arms," that "citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States...," Justice Scalia meant what he said and not something else. The district court erroneously concluded Justice Scalia did not

9th Cir. Case No. 13-56203

Page 34

mean what he said, and the district court did so without any citation to support it's conclusion.

The district court did not conclude that there is no Second Amendment Right to Openly Carry a loaded or unloaded firearm in non-sensitive public places. Instead, the district court applied rational review to the challenged laws, called it "intermediate scrutiny" and attempted to cement its case by relying on decisions which applied intermediate scrutiny to the *concealed carry of handguns*, or in the case of *Woollard v. Gallagher*, 712 F.3d 865,(4th Cir. 2013), permits which would have enabled unrestricted concealed carry of handguns. *Woollard* was a case out of Maryland which, like New York, does not prohibit the open carry of long guns, loaded or unloaded in incorporated cities or unincorporated county territory where they discharge of a firearm is prohibited. Concealed carry in public is a presumptively lawful prohibition and Open Carry in public, particularly with a handgun, is the right guaranteed by the Constitution according to *Heller* at 2809 and 2816-2817.

Defendant Harris did however claim that the Heller decision limited the scope of the Second Amendment to the inside of one's home.

"This opinion and its holding are confined to those lawful marriages." *United States V. Windsor* United States Supreme Court No. 12–307. Decided June

9th Cir. Case No. 13-56203                                              Page 35

26, 2013; slip opinion at pg 26.

If the Supreme Court had intended to limit the Heller decision to the four corners of one's home it certainly could have done so. All it takes is one sentence.

In their combined 31 pages of opposition to Plaintiff Nichols motion and denial of Plaintiff Nichols motion, neither Plaintiff Harris nor the district court could point to any language limiting the scope of the Second Amendment to one's home. They couldn't because there isn't any such language. Nor can they point to anything in Heller or *McDonald v. City of Chicago*, Ill., 130 S. Ct. 3020 - Supreme Court (2010) which requires a permit to exercise one's fundamental right to self-defense by openly carrying a loaded firearm. Open Carry handgun permits are not available in counties where 94% of the State's population resides. Open Carry long gun permits for private citizens do not exist in California.

In oral arguments to *Heller*, Justice Scalia invited Heller's attorney, Alan Gura, to challenge the permit requirement, Mr. Gura declined to do so. Unlike Plaintiff Nichols, who has always challenged that he be required to have a permit before exercising his fundamental, enumerated right to bear arms.

Of all the Federal Appellate cases on the Second Amendment, the laws struck down by the 7th Circuit Court of Appeals in *Moore v. Madigan*, 702 F. 3d 933 (2012) are a mirror image of the laws in both plain text and in the scope of

9th Cir. Case No. 13-56203

Page 36

their application to the California laws Plaintiff Nichols seek to enjoin. The district court declared *Moore* to be inapposite citing ""flat[ly] ban[ned]...carrying ready-to-use guns outside the home" with no self-defense exception and no provision for obtaining concealed-carry licenses."

The statutes Plaintiff Nichols seeks to enjoin do not contain a self-defense exception either. Like the virtually identically worded statutes struck down by the 7th Circuit, the Illinois self-defense exception is found in a separate statute and like California, self-defense in violation of the weapons statute is an affirmative defense. *People v. Rodriguez*, 782 NE 2d 718 - Ill: Appellate Court, 1st Dist., 1st Div. (2002) at 729.

Unlike California, where one needs to be in "grave, immediate danger," Illinois requires one to merely reasonably believe he is in imminent harm, unless the attacker is unarmed in which case the threshold rises to "serious bodily harm" which is far less a threshold than grave danger.

The district court erred in concluding that Illinois' lack of concealed carry permits was dispositive. In the case of the Illinois laws, the statutes applied to both open and concealed carry. Facially invalidating the laws entailed that the concealed carry prohibitions would fail as well. and Judge Posner gave his reasons for invalidating the concealed carry prohibitions in his decision.

9th Cir. Case No. 13-56203

Page 37

Judge Posner also qualified his decision "...a state may be able to require "open carry" — that is, require persons who carry a gun in public to carry it in plain view rather than concealed. See *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783..." Dkt #78, pg 12.  Judge Posner, unlike the district court, concluded that Justice Scalia meant exactly what he said in *Heller* about *Open Carry being the right guaranteed by the Constitution.*

The 7th Circuit recognized that Open Carry is the right guaranteed by the constitution and that states may prohibit concealed carry.  Illinois' more liberal affirmative defense for use of a weapon in self-defense did not salvage the laws of that state.

"Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause. People do not have to voluntarily give up their privacy or freedom of movement, on pain of justifying forcible deprivation of those same liberties if they refuse." *US v. Fuentes*, 105 F. 3d 487 - Court of Appeals, 9th Circuit 1997 at 490.

To this, Defendant Harris gave but a one paragraph non-reply in her reply. Instead of countering Plaintiff Nichols' citation to Fuentes in his motion, she claimed "Nichols's (sic) Fourth Amendment claim rises or falls with his Second Amendment claim."  The district court said that Defendant Harris was incorrect but concluded instead that "..the Court can envision any number of scenarios in which a police officer would have probable cause to arrest someone after they have

refused to allow the officer to determine if their firearm was loaded."

Unfortunately, the district court failed to provide a single example where mere refusal to consent to a search in and of itself gives "rise to reasonable suspicion or probable cause." PC 25850(b), which was originally written and enacted before *Terry v. Ohio*, 392 US 1 - Supreme Court (1968) fails even the strictest interpretation of facial invalidity favored by the district court - *United States v. Salerno*, 481 U.S. 739, 745 (1987) a level of facial invalidity the United States Supreme Court did not apply in either *Heller* or *McDonald*. The District of Columbia did not ban the possession of all handguns in the home prior to *Heller*. Those who had a permit issued prior to September 24, 1976 were exempted from the ban and the law itself had a vaguely worded exemption for antique pistols.

There were many lawful applications of the District of Columbia laws which *Heller* facially invalidated. There were many lawful applications of the Chicago law which *McDonald* facially invalidated. The dissents in both *Heller* and *McDonald* cited *Salerno*. The United States Supreme Court in their majority opinions have provided two examples for what constitutes facial invalidity in a Second Amendment context. *Salerno* is not one of them.

## CONCLUSION

The most disturbing error made by the district court was its conclusion that

the Unloaded Open Carry of firearms could be banned not because the people who merely openly carry unloaded firearms are a danger to the public, but because police might overreact and shoot them as well as shoot innocent bystanders in the process; thereby creating a danger to the public. By this dangerous logic, the government can ban everyone from doing anything, everywhere and anytime because a police officer might overreact and start shooting.

Plaintiff Nichols submits that all of the laws on this issue fail even rational review, even if *Heller* had permitted rational review, which it did not.

The laws at issue in this appeal are invalid, both facially and as-applied. They should be enjoined preliminarily and permanently.

Plaintiff Nichols requests the opportunity to present oral argument. Oral argument is necessary because this case involves numerous constitutional issues that once clarified will determine the scope of the Second, Fourth and Fourteenth Amendments protections.

Plaintiff Nichols reiterates his request, pursuant to Circuit Rule 34-3, for a priority hearing and submission date.

## NOTICE OF RELATED CASES AND STATUS

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellant Charles Nichols, In Pro Per, hereby gives notice to this Court and the Court's Clerk of cases potentially related to this case (*Nichols*), and the status of these potentially related cases.

*Nichols*, in this appeal, seeks a preliminary injunction barring the enforcement of California Penal Code sections 25850(a), 25850(b), 26350 and 26400 to the extent they prohibit, or infringe on the right of PLAINTIFF NICHOLS and similarly situated individuals, who are not prohibited from possessing firearms, from openly carrying firearms; in non-sensitive public places, on private residential property and inside or on a motor vehicle for the purpose of self-defense and for other lawful purposes.

All of these potentially related cases assert that they have a right to carry a fully functional, loaded firearm in public; as does *Nichols*.

*Nichols* does not seek to combine his case with any of these. Neither does he, at this time, seek to schedule oral arguments before the same panel. *Nichols* is not an attorney, he is arguing his case as a pro se appellant. His reading of the F.R.A.P and 9th Circuit Rules is that he is required to file this notice.

The Appellants in these potentially related cases are the final arbiters on what they seek on appeal.

The following potentially related cases have appealed a ruling from the District Courts. There are other cases still be argued in District Courts but these are the ones

known to *Nichols* which are on appeal. The potentially related cases on appeal are, in order of their appellate filing dates:

*Richards v. Prieto* ("*Richards*").

**Ninth Circuit Case Number:** 11-16255
**Date Appeal Filed:** May 19, 2011
**Briefing Status:** Fully briefed.
**Oral Argument Date:** Argued and submitted Dec. 6, 2012

*Rothery v. County of Sacramento*("*Rothery*").

**Ninth Circuit Case Number:** 09-16852
**Date Appeal Filed:** August 25, 2009
**Briefing Status:** 5/15/2013 "Filed clerk order (Deputy Clerk: LBS): Appellees' joint motion to stay appellate proceedings pending *Mehl v. County of Sacramento*, no. 08-15773, is granted. Appellate proceedings are stayed until September 3, 2013. At or prior to the expiration of the stay of appellate proceedings, the appellees shall file the answering briefs or file a motion for appropriate relief. If the answering briefs are filed, the optional reply brief is due within 14 days after service of the last-served answering brief. In the absence of a motion, the stay of appellate proceedings will terminate without further notice.[8630074] (WL)" – Docket #51
***Oral Argument Date:*** None set

*Peruta v. County of San Diego*("*Peruta*")

***Ninth Circuit Case Number:*** 10-56971
**Date Appeal Filed:** December 16, 2010
**Briefing Status:** Fully briefed.
***Oral Argument Date:*** Argued and submitted Dec. 6, 2012

*Birdt v. Beck* ("*Birdt*").

**Ninth Circuit Case Number:** 12-55115
**Date Appeal Filed:** January 17, 2012
**Briefing Status: Reply** brief filed on November 8, 2012.
**Oral Argument Date:** None set/Appellant waived/Joint request filed by

-2-

Appellees on 11/02/2012

*Baker v. Kealoha* ("*Baker*").

> **Ninth Circuit Case Number:** 12-16258
> **Date Appeal Filed:** May 29, 2012
> **Briefing Status:** Fully briefed.
> **Oral Argument Date:** Argued and submitted Dec. 6, 2012

*Thomson v. Torrance Police Department* ("*Thomson*").

> **Ninth Circuit Case Number:** 12-56236
> **Date Appeal Filed:** July 3, 2012
> **Briefing Status:** Reply brief filed.
> **Oral Argument Date:** None set

*Raulinaitis, et al v. LASD* ("*Raulinaitis*).

> **Ninth Circuit Case Number:** 12-56236
> **Date Appeal Filed:** August 15, 2012
> **Briefing Status:** Reply brief filed.
> ***Oral Argument Date:*** *None set*

*McKay v. Sheriff Hutchens* ("*McKay*").

> **Ninth Circuit Case Number:** 12-57049
> **Date Appeal Filed:** November 9, 2012
> **Briefing Status:** Reply brief filed.
> ***Oral Argument Date:*** *None set*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2013, I have filed and served the foregoing

**APPELLANT'S INFORMAL BRIEF** by causing an original and seven copies of

the document and any attachments to be delivered to the Clerk of the Court by

United States Mail and two copies by United States Mail to:

Jonathan Michael Eisenberg, Deputy Attorney General
Direct: 213-897-6505
CALIFORNIA DEPARTMENT OF JUSTICE
Suite 1702
300 S. Spring Street
Los Angeles, CA 90013

Lisa Bond
Direct: 213-626-8484
RICHARDS, WATSON & GERSHON
Suite 4000
355 South Grand Avenue
Los Angeles, CA 90071-3101

Thomas Peter Pierce
Direct: 213-626-8484
RICHARDS, WATSON & GERSHON
40th Floor
355 South Grand Avenue
Los Angeles, CA 90071-3101

Charles Nichols. In Pro Per