No. 13-56203

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**CHARLES NICHOLS,**

                                        Appellant-Plaintiff,

        **v.**

**EDMUND G. BROWN, Jr., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI, and DOES 1 to 10,**

                        Respondents-Defendants.

On Appeal from the United States District Court
for the Central District of California,
Case No. 2-cv-11-09916-SJO-SS,
The Honorable S. James Otero, Judge

**BRIEF OF RESPONDENT
CALIFORNIA ATTORNEY GENERAL
KAMALA D. HARRIS**

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone: (213) 897-6505
  Fax: (213) 897-1071
  Email: Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Respondent-Defendant*
*Kamala D. Harris, California Attorney*
*General*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................. 1

Statement of the Case ................................................................... 3

Statement of Facts ....................................................................... 8

Law of Motions for Preliminary Injunctions ............................... 11

Standard of Review ..................................................................... 12

Argument ................................................................................... 13

I.    The District Court Did Not Abuse Its Discretion in
      Denying Charles Nichols's Motion for a Preliminary
      Injunction .......................................................................... 13

      A.    The District Court Did Not Apply an Erroneous
            Legal Standard .......................................................... 13

            1.    The District Court Did Not Err in Treating
                  Charles Nichols's Motion as a Facial Attack
                  on California's Open-Carry Laws ..................... 14

            2.    The District Court Did Not Err in
                  Dispensing with Oral Argument and not
                  Asking for Supplemental Briefing .................... 15

            3.    The District Court Did Not Err in Declining
                  (Preliminarily) to Invalidate California Penal
                  Code Section 25850 Under *Hunter v.
                  Underwood*, 471 U.S. 222 (1985) ..................... 17

            4.    The District Court Did Not Err in Deciding
                  that Nichols's Expansive View of the
                  Second Amendment Is Not the Law .................. 21

                  a.    No United States Supreme Court Case
                        Adopts Nichols's View ............................ 21

                  b.    No United States Court of Appeals
                        Adopts Nichols's View ............................ 23

i

# TABLE OF CONTENTS
## (continued)

Page

5.      The District Court Did Not Err in Taking
        into Account Nichols's One-and-a-Half-
        Year Delay in Seeking a Preliminary
        Injunction............................................................ 28

6.      The District Court Did Not Err in How It
        Applied the Preliminary-Injunction Factors....... 39

7.      The District Court Did Not Err in Accepting
        One of the Longstanding Rationales for
        California's Open-Carry Laws ........................... 30

B.    Nichols Does Not Accuse the District Court of
      Making Any Clearly Erroneous Finding of Fact .......... 32

II.    The District Court Correctly Performed the Multi-Factor
       Analysis of Motions for Preliminary Injunctions ................... 32

A.    The District Court Correctly Concluded that
      Nichols Did Not Establish a Likelihood of Success
      on the Merits in this Case ............................................ 32

B.    The District Court Correctly Concluded that
      Nichols Did Not Establish a Likelihood of
      Suffering Irreparable Harm in the Absence of
      Preliminary Relief......................................................... 35

C.    The District Court Correctly Concluded that
      Nichols Did Not Establish that the Balance of
      Harms Tipped in His Favor and that an Injunction
      Is in the Public Interest ................................................ 35

Conclusion ................................................................................. 36

Statement of Related Cases........................................................ 38

# TABLE OF AUTHORITIES

**Page**

CASES

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..................................................... 12, 30

*Coalition for Econ. Equality v. Wilson*
    122 F.3d 718 (9th Cir. 1997) ............................................................ 35

*DISH Network Corp. v. Fed. Commc'ns. Comm'n*
    653 F.3d 771 (9th Cir. 2011) ...................................................... 13, 32

*District of Columbia v. Heller*
    554 U.S. 570 (2008)................................................................. passim

*Drake v. Filko*
    __ F.3d __, 2013 WL 3927735 (3d Cir. 2013) ............................ 25, 27

*GeorgiaCarry.Org, Inc. v. Georgia*
    687 F.3d 1244 (11th Cir. 2012) ........................................................ 25

*Heck v. Humphreys*
    512 U.S. 477 (1994)......................................................................... 33

*Hightower v. City of Boston*
    691 F.3d 61 (1st Cir. 2012).............................................................. 25

*Hunter v. Underwood*
    471 U.S. 222 (1985)............................................................... 16-18, 21

*Kachalsky v. Cacace*
    133 S.Ct. 1806 (2013)...................................................................... 23

*Kachalsky v. County of Westchester*
    701 F.3d 81 (2d Cir. 2012) ................................................... 22, 25, 27

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Kim v. Kang*
    154 F.3d 996 (9th Cir. 1998) ............................................................. 18

*McDonald v. City of Chicago*
    ___ U.S. ___, 130 S. Ct. 3020 (2010) ........................................ passim

*Moore v. Madigan*
    702 F.3d 933 (7th Cir. 2012) ...................................................... 27, 28

*Morrow v. Topping*
    437 F.2d 1155 (9th Cir. 1971) ......................................................... 16

*Nader v. Brewer*
    386 F.3d 1168 (9th Cir. 2004) ......................................................... 13

*Nichols v. Brown*
    859 F. Supp. 2d 1118 (C.D. Cal. 2012) ............................................ 4

*Nichols v. Brown*
    __ F. Supp. 2d __, 2013 WL 869675 (Mar. 3, 2013) .......................... 5

*Nordyke v. King*
    681 F.3d 1041 (9th Cir. 2012) ......................................................... 33

*Nunn v. State*
    1 Ga. 243 (1846) .............................................................................. 22

*Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*
    762 F.2d 1374 (9th Cir. 1985) ......................................................... 28

*State v. Chandler*
    5 La. Ann. 489 (1850) ..................................................................... 22

*United States v. Black*
    707 F.3d 531 (4th Cir. 2013) ........................................................... 24

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Booker*
   644 F.3d 12 (1st Cir. 2011)................................................................ 26

*United States v. Mahin*
   668 F.3d 119 (4th Cir. 2012) ........................................................... 26

*United States v. Masciandaro*
   638 F.3d 458 (4th Cir. 2011) ........................................................... 26

*United States v. Vongxay*
   594 F.3d 1111 (9th Cir. 2010) ......................................................... 24

*Wash. State Grange v. Wash. Republican Party*
   552 U.S. 442 (2008)........................................................................... 32

*Williams v. State*
   10 A.3d 1177 (Md. 2011) ................................................................. 26

*Winter v. Natural Res. Def. Council*
   555 U.S. 7 (2008)............................................................................... 29

*Woollard v. Gallagher*
   712 F.3d 865 (4th Cir. 2013) ..................................................... 24, 25

**TABLE OF AUTHORITIES**
(continued)

Page

CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. II.................................................................Passim
U.S. Const. Amend. IV ................................................................ 32, 33
U.S. Const. Amend. XIV ..............................................................Passim

STATUTES

Cal. Pen. Code § 12031 ......................................... 3, 19, 20, 21
                    § 25850.................................................Passim
                    § 26155.................................................. 4, 5
                    § 26175....................................................... 9
                    § 26350.................................................. 5, 6, 19
                    § 26400..................................................... 5, 6

LOCAL RULES

U.S.D.C., C.D. Cal., L.R. 7-15 ............................................. 15
                    § 7-5 .......................................................... 16
                    § 7-9 .......................................................... 16
                    § 7-10 ........................................................ 16

Respondent-Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following brief in opposition to the interlocutory appeal of Appellant-Plaintiff Charles Nichols ("Nichols") of the district court's denial of his motion for a preliminary injunction.

## INTRODUCTION

Nichols is a self-styled "open-carry" gun-rights activist who is trying to make a radical change to everyday life throughout California. Nichols advocates for almost everyone to be able to carry loaded or unloaded firearms openly in public places. Sometimes with and sometimes without a lawyer (SER000038-45), Nichols has pursued the present litigation to overturn California's multiple laws that restrict open carrying of firearms. Nichols advocates an extreme interpretation of the Second Amendment to the U.S. Constitution that enshrines open carry as a core right and practice, and, quoting state case law from the antebellum South, denounces anything less, even licensed concealed carry. SER000102. This Court need not and should not implement Nichols's broad reading of the Second Amendment and (preliminarily) invalidate critical California public-safety measures.

Nichols recently moved the district court for a preliminary injunction against the enforcement of California's three open-carry laws. SER00088-

1

91.  The court correctly denied the motion.  SER000004-14; SER000027-37.

Nichols did not – and could not – show a likelihood of ultimately prevailing

on the merits of the case, because no court has agreed with Nichols's novel

proposition that the Second Amendment not only confers an individual right

to bear arms outside the home but also guarantees a virtually unrestricted

open-carry right.  Furthermore, Nichols could not identify any harm to

himself from the denial of a preliminary injunction, as Nichols made wholly

abstract arguments about alleged constitutional rights, unrelated to any real-

world set of facts, events, or occurrences.  The district court also recognized

that the state statutes under attack are critical public-safety measures, and an

injunction preventing their enforcement would endanger the general public

as well as law-enforcement officers.

Presently, Nichols seeks interlocutory review of the district court's

ruling (SER000001-03) and more generally seeks an unprecedented holding

that would massively expand Second Amendment rights.  Appellant's

Informal Brief ("AIB") at 32.  However, this Court should rule against

Nichols, considering his claim in the context of just the more narrow

question presented, which is simply whether the district court abused its

discretion in denying Nichols's motion for a preliminary injunction.

Because Nichols failed to make the case for a preliminary injunction, the district court's ruling was correct, and this Court should affirm that ruling.

## STATEMENT OF THE CASE

In November 2011, Nichols filed the original complaint in this case in the U.S. District Court in Los Angeles, California. Nichols sought to enjoin enforcement of California Penal Code section 12031, which was recodified as California Penal Code section 25850 ("Section 25850"), effective January 1, 2012. In essence, Section 25850 bans the carrying of loaded firearms in public places and provides, in pertinent part, as follows:

> (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

> (b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory.

> Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Nichols named as defendants not only the Attorney General but also Edmund G. Brown Jr., the Governor of California ("the Governor"), the City

3

of Redondo Beach, the Redondo Beach Police Department, and Redondo Beach Police Chief Joseph Leonardi ("Chief Leonardi").[1]

In early 2012, Nichols effectuated service of process of the original complaint on all the defendants, and, in three separate motions, all the defendants sought to have the case dismissed for lack of subject-matter jurisdiction (lack of standing).  In May 2012, the district court granted the dismissal motions, partly with leave to amend and partly with prejudice. *Nichols v. Brown*, 859 F. Supp. 2d 1118 (C.D. Cal. 2012).  The district court dismissed with prejudice the Governor, as a party, as well as Nichols's cause of action based on the California state constitution.

Later in May 2012, Nichols filed a first amended complaint.  This time, he sought to enjoin enforcement of not only Section 25850 but also California Penal Code section 26155 ("Section 26155"), which concerns local-government licensing of people to carry firearms in public, and two Redondo Beach municipal ordinances about the open carrying of firearms in parks in the beach city.  Nichols named as defendants not only the Attorney General, the City of Redondo Beach, the Redondo Beach Police Department,

---

[1] Nichols does not reside in Redondo Beach.  AIB at 17-18.  However, Nichols has said that he spends a lot of time, doing activities like banking and shopping, in Redondo Beach, and so wants to carry his firearms openly in Redondo Beach, in particular.  SER000067.

4

and Chief Leonardi, but also Redondo Beach Police Officer Todd Heywood ("Officer Heywood").

Once again, the various defendants, the Attorney General by herself and the Redondo Beach defendants as a group, moved to dismiss the case for lack of subject-matter jurisdiction. In March 2013, the district court partly granted and partly denied the dismissal motions. *Nichols v. Brown*, __ F. Supp. 2d __, 2013 WL 869675 (Mar. 3, 2013). The district court dismissed with prejudice Chief Leonardi and Officer Heywood.

Later in March 2013, Nichols filed a second amended complaint (SER000046-87), which is the operative – and, per the district court's scheduling order, the last possible – complaint. SER0000324, ll. 3-5. This time, Nichols seeks to enjoin enforcement of not only Section 25850, Section 26155 (described above), and the two Redondo Beach ordinances, but also relatively new California Penal Code sections 26350 ("Section 26350") and 26400 ("Section 26400"), which together, in essence, ban the carrying of *un*loaded firearms in public places, and provide in pertinent part:

> [Section 26350] A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on [any public place].

> [Section 26400] A person is guilty of carrying an unloaded firearm that is not a handgun in an

5

> incorporated city or city and county when that person
> carries upon his or her person an unloaded firearm that
> is not a handgun outside a vehicle while in the
> incorporated city or city and county.

Nichols additionally seeks to enjoin enforcement of 11 other California Penal Code sections concerning local-government licensing of people to carry firearms in public.  (See SER000084, ¶¶ G, H, listing the statutes.) Only the Attorney General and the City of Redondo Beach were named as defendants in the second amended complaint.

In April 2013 – before any defendant filed a pleading responsive to the second amended complaint – Nichols moved for a preliminary injunction against enforcement of Section 25850, Section 26350, and Section 26400. SER000088-117.[2]  He argued that enforcement of those laws violates his supposed right under the Second Amendment to carry firearms openly outside his home anywhere in California, even the most densely populated parts of Los Angeles County.  Nichols also argued that Section 25850, subdivision (b), authorizing peace officers to check whether openly carried firearms are loaded, violates the Fourth Amendment right to be free from

---

[2] The motion did not challenge the California statutes addressing local-government licensing of people to carry firearms in public the California -- *or the Redondo Beach ordinances*.  The City of Redondo Beach did not respond to the motion.

6

unreasonable searches. And Nichols also argued that it was a Fourteenth Amendment Equal Protection Clause violation that certain classes of people are statutorily exempt from the open-carry ban.

The Attorney General opposed the motion, including objecting to some of the evidence that Nichols lodged with the motion. SER0000307-12. Preliminarily, the Attorney General emphasized that Nichols did not base his motion on any actual set of facts, events, or occurrences, but rather on just abstract ideas about rights. Additionally, the Attorney General pointed out that courts have not interpreted the Second Amendment nearly as broadly as Nichols does, so he does not have a likelihood of succeeding on the merits of his case. Likewise, Nichols did not show that he was actually harmed by the existence of the laws; he argued little more than that the deprivation of his alleged constitutional rights was sufficient harm.

After Nichols filed a reply, the district court, without entertaining oral argument, took the matter under submission, and shortly thereafter issued an order denying the motion. SER000004-14; SER000027-37.

In the interim, the Attorney General answered Nichols's second amended complaint. SER0000124-44. Meanwhile, the City of Redondo Beach filed another motion to dismiss the complaint. In August 2013, with that motion pending, Nichols voluntarily dismissed the City of Redondo

7

Beach from the case.  SER000348-50; cf. SER000327-29.  But Nichols's

case against the Attorney General is ongoing at the district court, despite

Nichols's requests for a stay of his own case from both the district court and

this Court.

     With the present interlocutory appeal, Nichols seeks to have the Court

overturn the district court's decision to deny Nichols's motion for a

preliminary injunction against enforcement of California's "open-carry"

laws, thereby vindicating Nichols's claimed "individual[] right to openly

carry firearms for the purpose of self-defense and other unlawful purposes

under the Second Amendment. . ."  SER000090.

## STATEMENT OF FACTS

     Nichols is the longtime president of a small organization called

California Right to Carry.  Nichols is waging a legal war to establish a broad

constitutional right for people to carry firearms openly in almost all public

places in California "for the purpose of self-defense and for other lawful

purposes."  SER000097, l. 11.5; accord, SER000049, ll. 18-19.  Nichols's

present battle is almost entirely hypothetical and theoretical, with the

pleadings and declarations giving very few particulars of how Nichols has

openly carried, or even plans openly to carry, firearms in public places, or of

what if any law-enforcement response there has been or would be to his real or hypothetical actions.

Nichols's motion for a preliminary injunction was even more devoid of relevant facts. The brief in support of that motion had a two-and-a-half-page background section that stated some of the procedural history of the case and quoted the statutes that Nichols wants judicially repealed, but stated nothing further. SER000098-100.[3] The district court observed, "Plaintiff has provided no fact pattern in his Motion for the Court to analyze." SER000007, fn. 1.

Similarly, Nichols's appellate brief's statement of facts consists of 16 pages of critiques of California's open-carry laws (AIB at 1-16),[4] followed by four pages of complaints to the effect that it is wrong that Nichols is

---

[3] Nichols did include a separate declaration with some personal information about himself. SER000118-22. But Nichols made no substantive use of that information in the brief.

[4] Nichols's critiques are based on many serious misunderstandings of the laws in question. For example, Nichols asserts incorrectly that the Attorney General "has the authority, under state law, to revise the application [for a license to carry a firearm concealed or openly] to remove the population, residency, good cause and good moral character requirements." AIB at 14. The Attorney General's role regarding such license applications is set forth in California Penal Code section 26175. Of course, the Attorney General cannot change California substantive law, e.g., permit a person to obtain a concealed-carry license in a locale other than where the person resides, by manipulating the standard license application form.

forbidden from carrying firearms openly in public places.  AIB at 17-20.

Nichols still provides no fact pattern for the Court to analyze.

Although *not* mentioned in the motion for a preliminary injunction, two more concrete events or occurrences in Nichols's open-carry campaign were alleged in the operative complaint:

The *first* event relates to Redondo Beach's municipals laws only, and not to the California statewide open-carry laws whose enforcement Nichols is challenging in the present appeal.  In May 2012, about a week prior to filing the complaint, in an event orchestrated specifically to create standing for this case, Nichols walked and stood in or near a park in Redondo Beach, openly carrying a long gun (with the wrong kind of bullets taped to the back end of the gun).  SER000066.  A Redondo Beach police officer – but nobody associated with the Attorney General – searched Nichols's gun to see if it was loaded and then took it away from Nichols (to be evidence in a possible forthcoming criminal prosecution of Nichols for violating Redondo Beach law).  SER000065-66.

Nichols was in fact prosecuted by a Redondo Beach deputy city attorney for violating the beach city's municipal laws regarding carrying firearms in parks.  SER000066, SER000337, SER000343.  In the criminal case, Nichols raised the same Second Amendment arguments that are raised

10

here, and the judge rejected the arguments.  SER000318.  On May 13, 2013, the day of trial, Nichols pleaded no contest to the municipal-law charges, and was fined and ordered not to commit the same or any similar offense again.  SER000345-46.  Nichols was permitted to and did retrieve his long gun used in the incident.  SER000328.

Notably, Nichols was never charged with violating any California state laws in connection with this incident.  It is perhaps for that reason that Nichols made no mention of this incident in the motion for a preliminary injunction.

*Second*, in the complaint, Nichols stated his intention some day to carry firearms openly in public places in California in ways that could violate state open-carry laws.  SER000068-69.  Based on the planned dates for those activities, Nichols would have violated the laws many times by now, but there is no evidence that Nichols actually followed through on the plans.  And these plans did not figure into Nichols's motion for a preliminary injunction.

## LAW OF MOTIONS FOR PRELIMINARY INJUNCTIONS

As the district court in this case explained:

> "The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it."  *Dymo Indus., Inc. v.*

*Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). Further, when deciding a motion for preliminary injunction, "the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Id.* A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, a preliminary injunction is also appropriate if the plaintiff can show that "serious questions going to the merits were raised and the balance of hardship tips sharply towards the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052 (9th Cir. 2010) (holding that the sliding scale test remains viable so long as plaintiff can satisfy other factors contained in *Winter*) (citation omitted).

SER000005.

## STANDARD OF REVIEW

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

2011), states as follows:

We review a district court's denial of a preliminary injunction for abuse of discretion. *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc). An abuse of discretion will be found if the district court based its decision "on an erroneous legal standard or clearly erroneous finding of fact." *Id.* "We review conclusions of law de novo and findings of fact for clear error." *Id.* at 986-87. We will not reverse the district court where it "got the law right," even if we "would have arrived at a different result," so long as the district court did not clearly err in its factual determinations.

12

The opinion in *Nader v. Brewer*, 386 F.3d 1168, 1169 (9th Cir. 2004), states as follows: "Our review of an order regarding a preliminary injunction is much more limited than review of an order involving a permanent injunction, where all conclusions of law are freely reviewable." (Citation and internal punctuation omitted.)

Also, *DISH Network Corp. v. Federal Communications Commission*, 653 F.3d 771, 776-77 (9th Cir. 2011), holds that if this Court agrees with the district court that the plaintiff seeking a preliminary injunction failed to show a likelihood of success on the merits, the Court may dispense with considering the other factors in preliminary-injunction analysis.

## ARGUMENT

I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING CHARLES NICHOLS'S MOTION FOR A PRELIMINARY INJUNCTION

### A.  The District Court Did Not Apply an Erroneous Legal Standard

Nichols makes seven claims each to the effect that the district court applied an erroneous legal standard in denying the motion for a preliminary injunction, but, as shown below, none of these claims of legal error has merit.

13

1.   **The District Court Did Not Err in Treating Nichols's Motion as a Facial Attack on California's Open-Carry Laws**

Nichols's "first and foremost" claim of legal error concerns the district court's treatment of the motion for a preliminary injunction as exclusively a facial challenge to the three California open-carry statutes, and not as an as-applied challenge to those laws.  (AIB at 23.)

About this issue, the district court explained as follows:

> The Court notes at the outset that Plaintiff is mounting a facial challenge.  In his Reply Plaintiff alludes to a "death threat against Plaintiff" and argues that this death threat and the Los Angeles County Sheriff's Department's purportedly lackluster response to this threat somehow converts Plaintiff's challenge into an as-applied challenge.  (Reply 3.)  Plaintiff also argues that "Plaintiff's [M]otion. . .explicitly states that his challenge is both facial and as-applied."  (Reply 2.)  These arguments are without merit.  A "claim is 'facial' [if]. . .it is not limited to plaintiffs' particular case, but challenges application of the law more broadly."  *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2817 (2010).  When such a claim "reach[es] beyond the particular circumstances of the[] plaintiff[]. . .[it] must. . .satisfy our standards for a facial challenge to the extent of that reach."  *Id.*  Thus, an example of an as-applied challenge would be if Plaintiff were being prosecuted by the [S]tate of California for violation of Section 25850, and Plaintiff then challenged the constitutionality of the statute as applied to him.  This is not the case here, where Plaintiff contends that the Challenged Statutes are unconstitutional generally.  (*See* Mot. 1.)

14

SER000007.

The district court is indisputably right on this issue. Nichols has never been threatened with being prosecuted under, much less charged with or convicted of violating, any of the California public-safety statutes in question, so Nichols cannot possibly bring an as-applied challenge to the statutes.

Furthermore, as demonstrated above, Nichols did not even present a fact pattern for the district court to analyze in connection with the motion for a preliminary injunction, making it impossible in a second, separate way for Nichols's constitutional challenge to the California open-carry laws to be treated an as-applied challenge.

> **2.** **The District Court Did Not Err in Dispensing with Oral Argument and Not Asking for Supplemental Briefing**

Nichols's second claim of legal error attacks two of the district judge's routine decisions about docket management: (1) not having oral argument on the motion, and (2) not asking for extra briefing beyond the reply brief. (AIB at 24.)

Both of those decisions were authorized by law and unobjectionable. Regarding the first decision, on oral argument, the district court's Local Civil Rule 7-15 states that a district judge "may dispense with oral argument

on any motion except where an oral hearing is required by statute, the

F.R.Civ.P. or these Local Rules."  Nichols has not cited – and cannot cite –

any requirement of an oral argument for a motion for a preliminary

injunction.  On the contrary, a litigant does not have a right to oral argument

on such a motion, so long as the litigant was permitted to submit written

briefing.  *Morrow v. Topping*, 437 F.2d 1155, 1157 (9th Cir. 1971).  Thus,

the district judge did not make a legal error by dispensing with oral

argument on Nichols's motion, which was fully briefed.

Regarding the second decision, on briefing, the district court's Local

Rules 7-5, 7-9, and 7-10 establish the sequence for motion briefing:  moving

papers, opposition, reply.  The district court followed this sequence for

Nichols's motion – meaning that Nichols got the last word.  Nichols was not

entitled to file any additional briefing; nor did the district court have to ask

for extra briefing.

### 3. The District Court Did Not Err in Declining (Preliminarily) to Invalidate California Penal Code Section 25850 Under *Hunter v. Underwood*, 471 U.S. 222 (1985)

Nichols's third claim of legal error is not easy to understand, but seems

to be that the district court erred in not striking down Section 25850 on the

authority of *Hunter v. Underwood*, 471 U.S. 222 (1985), because of asserted

16

evidence that, in 1967, the California Legislature passed the original version of the law at least in part out of fear of the African-American members of the Black Panther Party openly carrying loaded firearms in public places. (AIB at 24, 29-32.)

The first thing to note about this claimed error of law is that it addresses the ruling on Section 25850 exclusively and has nothing to do with or say about the ruling on Section 26350 or Section 26400, California's *un*loaded-open-carry laws.[5]

In any event, the district court did not misinterpret *Hunter* in the course of preliminarily upholding Section 25850. In *Hunter*, the U.S. Supreme Court considered whether a 1901 provision in the Alabama Constitution that disenfranchised people convicted of committing certain crimes violated the Equal Protection Clause of the Fourteenth Amendment. *Hunter*, 471 U.S. at 223-24. The Court invalidated the constitutional provision because of two factors: (a) the legislative history exposed that racism against African-Americans was a substantial and motivating factor in the enactment of the

---

[5] The Attorney General placed the legislative histories of the two unloaded-open-carry laws in the record before the district court. SER000145-306. The legislative histories betray no indications that race or racism played any role in the enactment of those laws. Likewise, there is no evidence in the record of racially discriminatory enforcement of those laws. Nichols has not contended (and could not truthfully contend) otherwise.

provision, *and* (b) it was uncontested that the provision had a racially discriminatory impact, disenfranchising African Americans disproportionately. *Hunter*, 471 U.S. at 227-28. *Hunter* cannot legitimately be construed to condemn Section 25850, the district court correctly reasoned, because Nichols did not present to the district court *any* evidence of any racially discriminatory *impact* of Section 25850.

Plainly trying to make up for this deficiency, for the first time with the present appeal, Nichols cites a 2003 California Department of Justice publication, *Concealable Firearms Charges in California* (the "Cal. DOJ Report"), which states that "[w]hen charged with PC section 12031 [now Section 25850], blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists throughout the period shown [2000-03]." Nichols argues that he has now shown both a racist motivation for and a racially discriminatory impact of Section 25850, imperiling the law's continued existence.

At least two problems plague Nichols's new argument. *First*, Nichols did not put the Cal. DOJ Report before the district court, which was thereby denied a chance to evaluate it. It is too late for Nichols to cite the Cal. DOJ Report now. See *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998). *Second*,

and entertaining Nichols's proposition for the sake of argument, it is

noteworthy that the quoted passage relates not to the enactment of Section

12031 in 1967, but rather to amendments made 33 years later.  There is a

critical separation of time and circumstances between the alleged racist

motive for the enactment of Section 12031 in 1967 and the alleged racially

discriminatory impact of Section 12031 in 2000-2003.  Page one of the Cal.

DOJ Report sets out the relevant information:

> Prior to January 1, 2000, existing law generally
> provided that carrying a concealed or loaded firearm
> was punishable as a misdemeanor and, under certain
> circumstances, a felony.  However, the Legislature
> determined that carrying a concealed or loaded firearm
> without being listed with the Department of Justice
> (DOJ) as the registered owner of the firearm is a serious
> crime and should be treated as such.  Assembly Bill
> (AB) 491 (Scott, 1999) amended both Penal Code (PC)
> sections 12025 (carrying a concealed firearm) and
> 12031 (carrying a loaded firearm) to increase the
> number of circumstances when an offense could be
> charged.  The following additional circumstances may
> be charged as either felonies or misdemeanors:
>
> - When a person has both a firearm and
>   unexpended ammunition in their immediate
>   possession and that person is not listed with the
>   DOJ as the registered owner of the firearm (PC
>   12025).
>
> - When a person carries a loaded firearm on his/her
>   person or in a vehicle on any public street and
>   that person is not listed with the DOJ as the
>   registered owner of the firearm (PC 12031).

19

> AB 491 also amended PC sections 12025 and 12031 to
> require district attorneys to report specified information
> to the Attorney General about individuals charged with
> carrying a concealed or loaded firearm. This
> information includes the gender, race/ethnic group, and
> age of any person charged with a felony or
> misdemeanor under either PC sections 12025 or 12031
> and any other offense charged in the same complaint or
> indictment. In addition, the Attorney General is required
> to compile these data and submit an annual report to the
> Legislature.

(Available online at http://oag.ca.gov/cjsc/pubs; last visited August 29,

2013.)

In 1967, open carrying of a loaded firearm in California was (in almost

all cases) a misdemeanor.  There literally could not have been data

indicating a racial disparity in felony charges versus misdemeanor charges

under Section 12031.  That disparity was first *possible* only after 2000, when

the Legislature, in AB 491, made some Section 12031 violations felonies.

Nichols has not alleged (and could not truthfully allege) that there was a

racist motivation for passage of AB 491 in 2000.  The Legislature in 2000

seemed cognizant of the possibility of racial disparities in law enforcement

and apparently wanted to identify any such disparities, because the

Legislature – for the first time – tasked local law-enforcement authorities

with compiling data about the race breakdown of charges under Section

12031.  Because Nichols has not presented any evidence that the Legislature

20

in 2000 had a racial motivation for amending Section 12031, or that the 1967 version of Section 12031 was enforced in a racially discriminatory way, Nichols has not shown that the two *Hunter* elements coexist in any version of Section 25850 and could form a basis for invalidating the law.

>  **4.   The District Court Did Not Err in Deciding that Nichols's Expansive View of the Second Amendment Is Not the Law**

Nichols's fourth claim of legal error concerns his "centerpiece" argument, which is that *District of Columbia v. Heller*, 554 U.S. 570 (2008), holds that there is a virtually unfettered individual right to carry firearms openly in public places.  (AIB at 24, 32-38.)  However, as shown below, the district court did not err in rejecting Nichols's expansive view of the Second Amendment.

>  **a.   No United States Supreme Court Case Adopts Nichols's View**

Contrary to Nichols's arguments, the U.S. Supreme Court has never held that the Second Amendment protects an individual right to carry firearms openly in public places.  Rather, *Heller*, 554 U.S. 570, 635, expressly conferred a limited right "for law-abiding responsible citizens to use arms in defense of *hearth and home*" (emphasis added).  As if to highlight the finiteness of the holding, *Heller* provided an expressly non-

21

exhaustive list of firearms regulations that are presumptively lawful, and included on the list are "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. at 625-27. Furthermore, *Heller* expressly that Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 628.

Nichols's pro-open-carry interpretation of *Heller* depends on a misreading of that case's discussion of two 19th-century state-court opinions, *Nunn v. State*, 1 Ga. 243 (1846), and *State v. Chandler*, 5 La. Ann. 489 (1850), which struck down open-carry bans (in part because it was then considered "manly" for people to carry firearms openly as opposed to concealed (*Chandler*, 5 La. Ann. at 490)). *Heller* did *not* adopt the holdings of those two long-ago cases. *Heller* merely cited the cases in demonstrating that "[m]any early-19th century state cases indicated that the Second Amendment right to bear arms was an individual right unconnected to militia service, though subject to certain restrictions." *Heller*, 554 U.S. at 611; cf. *Kachalsky v. County of Westchester*, 701 F.3d 81, 90 n.12 (2d Cir. 2012) ("*Nunn* is cited in Justice Scalia's majority opinion in *Heller* as an example of state court responses to handgun regulatory efforts within the states").

22

In *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044 (2010), the Supreme Court reiterated that "our central holding in *Heller* [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, *most notably for self-defense within the home*" (emphasis added). "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id*., 130 S. Ct. at 3046 (quotation marks omitted).

There is nothing in *Heller* or *McDonald* (or any other Supreme Court case) to indicate that the Supreme Court will expand those cases' holdings and recognize an open-carry right, as Nichols advocates. And, recently, the Supreme Court denied a petition for a writ of certiorari in a case that could have afforded the high court an opportunity to decide the open-carry question. *Kachalsky v. Cacace*, 133 S.Ct. 1806 (2013) (denying petition for writ of certiorari).

### b.   No United States Court of Appeals Has Adopted Nichols's View of the Second Amendment

Like the Supreme Court, this Court has never held that the Second Amendment confers an individual right to carry firearms openly in public places. On the contrary, the Ninth Circuit has interpreted Supreme Court jurisprudence as conferring "the right to register and keep a loaded firearm

in [the] home for self-defense, provided [the person] was 'not disqualified from the exercise of Second Amendment rights.'"  *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (citing *Heller*, 554 U.S. at 635).

It follows that the district court could not have erred by rejecting Nichols's contrary interpretation of the Second Amendment.

Furthermore, the overwhelming majority of the other federal appellate courts that have considered the open-carry question (or a related question) have interpreted *Heller* and *McDonald* as recognizing only a narrow right to keep an operable handgun in the home for self-defense.  For example, in the recent case of *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), the Fourth Circuit criticized the Maryland district court for making a "trailblazing pronouncement that the Second Amendment right to keep and bear arms for the purpose of self-defense extends outside the home. . ." (*id.* at 868) and for "br[eaking] ground that our superiors have not tread, proclaiming that the Second Amendment right. . .of individuals to possess and carry firearms in case of confrontation [] is a right that extends beyond the home." (*Id.* at 872.)  "*Heller*. . .was principally concerned with the 'core protection' of the Second Amendment: 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" (*Id.* at 874.)  *Woollard* also clarifies that another case, *United States v. Black*, 707

24

F.3d 531 (4th Cir. 2013), does *not* hold that the Second Amendment has force outside the home.  *Woollard*, 712 F.3d at 875 n.5.

The Second Circuit has also rejected the broad right claimed by Nichols.  See *Kachalsky*, 701 F.3d at 89, 94 ("What we know from [Heller and McDonald] is that Second Amendment guarantees are at their zenith within the home.  What we do not know is the scope of that right beyond the home. . .  The state's ability to regulate firearms and, for that matter, conduct, is qualitatively different in public than in the home.  *Heller* reinforces this view").  Other circuit-court decisions similarly cast doubt on viewing *Heller* and *McDonald* as creating an individual right to carry weapons openly outside the home.  See *Drake v. Filko*, __ F.3d __, __, 2013 WL 3927735 at *2-*3 (3d Cir. 2013) ("It remains unsettled whether the individual right to bear arms for the purpose of self-defense extends beyond the home"; declining to define scope of right); *Hightower v. City of Boston*, 693 F.3d 61, 73 (1st Cir. 2012) ("Under our analysis of *Heller*. . .the government may regulate the carrying of concealed weapons outside of the home"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259, 1264 (11th Cir. 2012) (*Heller* "went to great lengths to emphasize the special place that the home – an individual's private property – occupies in our society. . .  [T]he pre-existing right codified in the Second Amendment does

25

not include protection for a right to carry a firearm in a place of worship against the owner's wishes"); *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) (declining criminal defendant's invitation to "recognize that Second Amendment protections apply outside the home. . ."); *United States v. Booker*, 644 F.3d 12, 25 n.17 (1st Cir. 2011) ("While we do not attempt to discern the 'core' Second Amendment right vindicated in *Heller*, we note that *Heller* stated that the Second Amendment 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home'"); *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("[A] considerable degree of uncertainty remains as to the scope of [the *Heller*] right beyond the home. . ."); cf. *Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) ("If the Supreme Court, in this dicta, meant its holding to extend beyond home possession, it will need to say so more plainly").

As these decisions show, the clear weight of legal authority is to recognize that *Heller* and *McDonald* should not be extrapolated to confer a broad right openly to carry a weapon, loaded or unloaded, in public. The district court did not err by taking the cautious approach to the Second Amendment espoused in these cases.

26

Nichols downplays all this legal authority because the cases did not

adjudicate the constitutionality of open-carry laws, but mostly addressed

concealed-carry laws.  (AIB at 33-34 (discussing *Kachalsky* only).)  Instead,

Nichols emphasizes a split (2-1) Seventh Circuit opinion, *Moore v.*

*Madigan*, 702 F.3d 933 (7th Cir. 2012), which dealt with a uniquely strict

Illinois law that broadly forbade publicly carrying any loaded or unloaded

firearms – "[a] blanket prohibition on carrying a gun in public." *Id.* at 934,

940.  "Remarkably, Illinois is the *only* state that maintains a flat ban on

carrying ready-to-use guns outside the home. . ." *Id.*  (Emphasis in original.)

There were no concealed-carry licenses available in Illinois.  *Id.*  The

decision in *Moore* invalidated Illinois's law, stating somewhat ambiguously,

"A right to bear arms thus implies a right to carry a loaded gun outside the

home." *Id.* at 936.[6]  Significantly, *Moore* invited the Illinois Legislature "to

craft a new gun law that will impose reasonable limitations consistent with

the public safety. . ." *Id.* at 942.  And the Illinois Legislature has responded

to *Moore* by enacting a concealed-carry scheme, Illinois Public Act 098-

0063 – not by enacting a pro-open-carry law.  Because California has a

---

[6] *Drake,* 2013 WL 3927735 at *3, criticizes *Moore* on this point:
"[T]he Seventh Circuit in *Moore* may have read *Heller* too broadly."

27

concealed-carry law already, it seems quite likely that the *Moore* Court would uphold California's pertinent laws. In sum, even *Moore* does not support Nichols's position that open carry is the lone, unassailable manifestation of Second Amendment rights outside the home.

### 5. The District Court Did Not Err in Taking into Account Nichols's One-and-a-Half-Year Delay in Seeking a Preliminary Injunction

Nichols's fifth claim of legal error concerns the district court's assessment that Nichols delayed for too long seeking a preliminary injunction, tacitly revealing a lack of urgent need for his requested relief. (AIB at 24-27.) Nichols seems to accept that a court may consider delay here. *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Nonetheless, Nichols attacks the district court's reasoning and conclusion.

So long as this Court believes that the district court applied the correct legal standard, this Court should not review the district court's analysis and conclusions short of an abuse of discretion. *Alliance for the Wild Rockies*, 632 F.3d at 1131. Therefore, Nichols's attack, accepting that the correct legal standard was applied, cannot support a properly done reversal of the district court's conclusions about delay.

28

If the Court nonetheless is inclined to give close consideration to Nichols's points, the Court should still find no reason to disturb the district court's conclusions.  Nichols has mischaracterized the district court's position on the delay, asserting that the district court expected Nichols to challenge Section 25850 many decades ago, when Nichols was a child. (AIB at 25.)  The district court expected and said no such thing.  The district court simply observed, justifiably, that the delay of one-and-a-half years between the filing of the complaint and the filing of the motion for a preliminary injunction reflects that Nichols did not urgently need injunctive relief.

### 6.    The District Court Did Not Err in How It Applied the Preliminary-Injunction Factors

Nichols's sixth and final claim of legal error is that the district court performed only the four-factor *Winter* test for preliminary injunctions, and not the alternative two-factor/sliding-scale *Alliance of the Wild Rockies* test. (AIB at 27-28.)  Nichols's argument misunderstands that the district court "f[ou]nd[] that application of the Winter factors *uniformly weighs against* preliminar[il]y enjoining the enforcement of the Challenged Statutes."

SER000037 (emphasis added).[7]  In other words, the district court found that Nichols "is unlikely to succeed on" *all* his claims (SER000034, SER000035, SER000036), *and* "fails to demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction."  SER000036.  Thereby, the district court necessarily, albeit implicitly, determined that performance of the *Alliance for the Wild Rockies* test, focusing on merit and irreparable harm, could not have led to a different conclusion about granting the requested relief.

### 7.  The District Court Did Not Err in Accepting One of the Longstanding Rationales for California's Open-Carry Laws

Toward the end of Nichols's appellate brief, he complains, "The most disturbing error made by the district court was its conclusion that the Unloaded Open Carry of firearms could be banned not because the people who merely openly carry unloaded firearms are a danger to the public, but because police might overreact and shoot them as well as shoot innocent bystanders in the process; thereby creating a danger to the public."  (AIB at

---

[7] Nichols seems to have the mistaken belief that the district court did something that Nichols calls "appl[ying] the 'Winter factors uniformly'" (AIB at 27), rather than what the district court actually did, which was finding that each factor – and hence all factors, uniformly – weighs against imposing a preliminary injunction.

39-40.)  Nichols appears to be referring to the district court's citation to part

of the legislative history of the unloaded-open-carry laws.  SER000011.

Nichols disputes the "dangerous logic" of the "tense-law-enforcement-

situations" justification for the open-carry laws.  AIB at 40.  However,

Nichols does not and cannot identify any *legal* error in the district court's

acceptance of this longstanding rationale for open-carry prohibitions, in the

determining that the Attorney General had established a substantial

government interest in public safety that justifies the open-carry laws.[8]

---

[8] It is unclear if two clipped critiques of the district court's decision
that Nichols slips into other parts of his appellate brief constitute substantive
averments that the district court applied erroneous legal standards.  First,
Nichols asserts that "the district court applied rational review to the
challenged laws, [but] called it 'intermediate scrutiny'…"  AIB at 35.  Yet
Nichols does not develop this quasi-argument at all, ending it at that point.
In any event, the district court made a prudent decision, given that the Ninth
Circuit has not yet articulated the standard of review for Second Amendment
challenges, to apply intermediate scrutiny without deciding that the standard
is the correct standard, and applied intermediate scrutiny in textbook
fashion.  SER000010-11.  *Accordingly, this Court should be able to rule
substantively on Nichols's appeal, even without deciding what standard of
review to apply in Second Amendment cases.*  Second, Nichols complains
that the district court, in rejecting the facial Fourth Amendment challenge to
Section 25850, should have provided a hypothetical example of where
refusal to consent to a peace officer's search of the firing chamber of a
carried firearm, to see if it is loaded, would create probable cause for arrest.
AIB at 39.  The district court has no such obligation and cannot be faulted
for failing to include in the ruling such unnecessary elaborations.

### B. Nichols Does Not Accuse the District Court of Making Any Clearly Erroneous Finding of Fact

Nichols states that of "every error made by the district court. . .most involve pure questions of law. . ."  AIB at 23.  Nichols does not allege that the district court made any erroneous findings of fact.

In sum, the Court should dispose of Nichols's appeal for the lack of a showing that the district court either applied an erroneous legal standard or made clearly erroneous findings of fact.

## II. THE DISTRICT COURT CORRECTLY PERFORMED THE MULTI-FACTOR ANALYSIS OF MOTIONS FOR PRELIMINARY INJUNCTIONS

### A. The District Court Correctly Concluded that Nichols Did Not Establish a Likelihood of Success on the Merits in this Case

As stated above, *DISH Network*, 653 F.3d at 776-77, holds that if this Court agrees with the district court that the plaintiff seeking a preliminary injunction failed to show a likelihood of success on the merits, the Court may dispense with considering the other factors in preliminary-injunction analysis.

The Attorney General submits that the facial-only feature of Nichols's attack on California's open-carry laws fatally compromises the challenge in its entirety.  *Wash. State Grange v. Wash. Republican Party*, 552 U.S. 442,

450-51 (2008).  As discussed above, Nichols has failed to show that the

challenged statutes are facially invalid under the Second, Fourth, or

Fourteenth Amendments, and so Nichols does not have a likelihood of

succeeding on the merits in the case.

Additionally, as detailed in the review of Supreme Court and federal

appellate court Second Amendment jurisprudence, above, and as the district

court found, Nichols is unlikely to succeed on the merits of his claim that the

Second Amendment confers an individual right on almost every person in

California to carry firearms openly in most public places (AIB at 1-2, 9, 16,

32, 36) – without even having to get a permit.  AIB at 36 ("Nor can they [the

district court and the Attorney General] point to anything in *Heller* or

*McDonald*. . .which requires a permit to exercise one's fundamental right to

self-defense by openly carrying a loaded firearm").

Regarding Nichols's Fourth Amendment claim, Nichols's no-contest

plea to the charges of violating Redondo Beach municipals laws and

voluntary dismissal of all Redondo Beach defendants in the present case

forecloses Nichols's Fourth Amendment complaints about the Redondo

Beach police officer who examined Nichols's openly exposed long gun to

see if it was loaded.  *Heck v. Humphreys*, 512 U.S. 477, 486-87 (1994).

33

Regarding Nichols's Fourteenth Amendment claim, *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012), holds that where a gun regulation does not discriminate among people based on suspect-class status (such as ethnicity, national origin, or race), a court should evaluate the equal-protection claim under relatively lenient rational-basis review. Applying rational-basis review because the open-carry laws indisputably do not discriminate among people based on suspect-class status, the district court concluded that it would have been rational for the California Legislature, e.g., to have considered it more dangerous for people openly to carry loaded firearms in densely populated public places versus sparsely populated public places, and so made it harder to obtain open-carry licenses for people in high-population areas versus low-population areas. As another example, the Legislature could rationally have concluded that, as a group, retired peace officers, who over the courses of their careers have likely had substantial contact with criminals, have stronger self-protection needs than other people have. In the end, Nichols has failed to show that any of the categories of persons allowed to openly carry handguns are irrational.

This Court need go no further in its review of the district court's ruling to affirm it.

34

**B.    The District Court Correctly Concluded that Nichols Did Not Establish a Likelihood of Suffering Irreparable Harm in the Absence of Preliminary Relief**

The above-described evidence that Nichols has only an intangible desire to carry firearms openly in public places, coupled with his telling one-and-a-half-year wait between filing the complaint and seeking preliminary injunctive relief, means that the district court did not err in concluding that Nichols did not establish irreparable harm in the absence of preliminary relief.

Rightfully, Nichols could not salvage his case by submitting, for the first time on his preliminary-injunction *reply* brief, a copy of part of one of his own e-mail messages containing hearsay excerpts from an alleged but unnamed third-party's years-old death threat against him, which threat Nichols admits the Los Angeles Sheriff's Department did not take seriously. AIB at 18-19.  Even if the death threat was real, Nichols's delay of one-and-a-half years in seeking any court relief related to the threat disposes of Nichols's claim of urgent need for the relief.

**C.    The District Court Correctly Concluded that Nichols Did Not Establish that the Balance of Harms Tipped in His Favor and that an Injunction Is in the Public Interest**

Given Nichols's non-showing of irreparable harm that would occur in the absence of a preliminary injunction, the district court surely did not err in

35

finding that the State of California's presumed "irreparable injury whenever an enactment of its people or their representatives is enjoined," *Coalition for Econ. Equality v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997), tipped the balance of harms against Nichols and meant that a preliminary injunction is not in the public interest.  SER000014.

## CONCLUSION

The district court did not err in framing the issues presented in Nichols's motion for a preliminary injunction.  The district court did not err in restating the applicable legal standards.  The district court did not err in finding facts.  Accordingly, the district court did not abuse its discretion in

denying the motion.  Nichols has demonstrated no reason to overturn the

district court's ruling.

Dated:  September 4, 2013          Respectfully submitted,


                                   KAMALA D. HARRIS
                                   Attorney General of California
                                   DOUGLAS J. WOODS
                                   Senior Assistant Attorney General
                                   MARK R. BECKINGTON
                                   Supervising Deputy Attorney General


                                    /s/_____
                                   JONATHAN M. EISENBERG
                                   Deputy Attorney General
                                   *Attorneys for Respondent-Defendant
                                   Kamala D. Harris, California Attorney
                                   General*

37

No. 13-56203

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**CHARLES NICHOLS,**

                        Appellant-Plaintiff,

        **v.**

**EDMUND G. BROWN, Jr., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**

                        Respondents-Defendants.

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases not mentioned in Appellant's Informal Brief in this matter.

Dated:  September 4, 2013        Respectfully submitted,


                        KAMALA D. HARRIS
                        Attorney General of California
                        DOUGLAS J. WOODS
                        Senior Assistant Attorney General
                        MARK R. BECKINGTON
                        Supervising Deputy Attorney General


                        _/s/_____
                        JONATHAN M. EISENBERG
                        Deputy Attorney General
                        *Attorneys for Respondent-Defendant*
                        *Kamala D. Harris, California Attorney*
                        *General*

38

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED.R.APP.P 32(a)(7)(C) AND CIRCUIT RULE 32-1**
**FOR No. 13-56203**

I certify that:  (check (x) appropriate option(s))

| X | 1.  Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **opening/answering/reply/cross-appeal** brief is |

| X | Proportionately spaced, has a typeface of 14 points or more and contains 7,833 words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words |

or is

| | Monospaced, has 10.5 or fewer characters per inch and contains _____ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text). |

| | 2.  The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a(7)(B) because |

| | This brief complies with Fed.R.App.P 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages. |

or

| | This brief complies with a page or size-volume limitation established by separate court order dated _____ and is |

| | Proportionately spaced, has a typeface of 14 points or more and contains _____ words, |

or is

| | Monospaced, has 10.5 or fewer characters per inch and contains __ pages or __ words or __ lines of text. |

| | 3.  Briefs in **Capital Cases**.<br>This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 and is |

| | Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words). |

or is

| | Monospaced, has 10.5 or fewer characters per inch and contains __ words or __ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text). |

☐  4. **Amicus Briefs**.

☐  Pursuant to Fed.R.App.P 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

or is

☐  Monospaced, has 10.5 or few characters per inch and contains not more than either 7,000 words or 650 lines of text,

or is

☐  Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32 (a)(1)(5).

September 4, 2013
_____
        Dated

/s/
_____
Jonathan M. Eisenberg
Deputy Attorney General

# CERTIFICATE OF E-FILING AND SERVICE

Court:          **U.S. Court of Appeals, Ninth Circuit**
Case Name:   *Nichols v. Brown*
Case No.:      **13-56203**

I, R. Velasco, declare as follows:

I am 18 years of age or older and not a party to this matter.  I am employed in Los Angeles, California, in the Office of the Attorney General, Department of Justice, State of California, which is the office of a member of the California State Bar, at which member's direction the following service is made.

I certify that at least some of the past or present participants in the above-entitled case are registered CM/ECF users.  I further certify that, with Jonathan M. Eisenberg, one of the attorneys of record in the above entitled case, I electronically filed the document entitled **BRIEF OF RESPONDENT CALIFORNIA ATTORNEY GENERAL KAMALA D. HARRIS** with the Clerk of the Court for the U.S. Court of Appeals, Ninth Circuit, by using the appellate CM/ECF system on September 4, 2013.  Participants in the case who are registered CM/ECF users will thereby be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed [1] **BRIEF OF RESPONDENT CALIFORNIA ATTORNEY GENERAL KAMALA D. HARRIS**, [2] **SUPPLEMENTAL EXCERPTS OF RECORD, VOLUME 1 (SER000001-37)**, [3] **SUPPLEMENTAL EXCERPTS OF RECORD, VOLUME 2 (SER000038-219)**, and [4] **SUPPLEMENTAL EXCERPTS OF RECORD, VOLUME 3 (SER000220-350)** by first-class U.S. mail, postage prepaid, or have dispatched the documents to a third-party commercial carrier for delivery within three calendar days to the following CM/ECF non-participants:

Charles E. Nichols; P.O. Box 1302; Redondo Beach, CA  90278

C.D. Michel, Sean A. Brady; Michel and Associates, P.C.; 180 E. Ocean Blvd., Ste. 200; Long Beach, CA  90802

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on September 4, 2013, at Los Angeles, California.

      R. Velasco

| Declarant | Signature |
|-----------|-----------|
